UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUROPA AUTO IMPORTS, INC. d/b/a MERCEDES-BENZ OF SAN DIEGO,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSAPCE WORKERS LOCAL LODGE NO. 1484, MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE 190 and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 22cv1987GPC(BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH LEAVE TO AMEND**<br>**[Dkt. No. 4.]** |

Before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 4.) Plaintiff filed a response on June 2, 2023. (Dkt. No. 7.) A reply was filed by Defendant on June 9, 2023. (Dkt. No. 10.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss for lack of subject

matter jurisdiction and GRANTS Defendant's motion to dismiss for failure to state a claim with leave to amend.[1]

**Background**

On December 15, 2022, Plaintiff Europa Auto Imports, Inc. d/b/a Mercedes-Benz of San Diego ("Plaintiff" or "Europa") filed a complaint against Defendant International Association of Machinists and Aerospace Workers Local Lodge No. 1484, Machinists Automotive Trades District Lodge 190 ("Defendant" or "Union") for 1) breach of the collective bargaining agreement, 2) tortious interference with prospective economic advantage and contractual business relations, 3) trespass to chattel, 4) trespass to real property, 5) defamation and 6) unfair competition under California Business & Professions Code section 17200 *et seq*. (Dkt. No. 1, Compl.)

Europa and the Union entered into a written collective bargaining agreement ("CBA") effective May 1, 2019 until April 30, 2022. (*Id.* ¶ 13.) The complaint alleges that Section 33 of the CBA provided that if the parties were still meeting and negotiating for a new contract, the provisions of the CBA, including the prohibitions on strikes, slowdowns and cessation of work, continued after April 30, 2022 and remained binding upon the parties. (*Id.* ¶¶ 13, 14.) Further, Section 7 of the CBA required the parties to resolve any disputes through the grievance and arbitration procedures. (*Id.* ¶ 15.)

The complaint also alleges from April 2022 through June 2022, Defendant planned, organized, and directed an illegal work slowdown among the bargaining unit employees covered by the contract. (*Id.* ¶ 17.) Around June 16, 2022, Defendant planned, organized, and directed an unlawful strike in violation of the CBA which began on June 17, 2022 despite the fact that negotiations and bargaining sessions were already

---

[1] Defendant filed a request for judicial notice of the unfair labor practice charges filed by Plaintiff, the decision to dismiss the charges by the Regional Director of Region 21 of the National Labor Relations Board ("NLRB") and denial of the appeals with the NLRB General Counsel Office's Office of Appeals ("GC"). (Dkt. No. 4-4.) Because the Court did not rely on these documents in its ruling, the Court DENIES Defendant's request for judicial notice as moot.

scheduled in July 2022. (*Id.* ¶ 18.) The unlawful strike continued until the date of the filing of the complaint. (*Id.*)

Prior to the termination of the CBA and through July 2022, Plaintiff and Defendant held bargaining sessions to amend the CBA. (*Id.* ¶ 16.) But, starting in May 2022 through September 2022, agents of Defendant engaged in conduct that violated the CBA. (*Id.* ¶ 11.) They intentionally trespassed upon Europa's property to intentionally interfere with its business operations and with its contractual relations with third parties. (*Id.*) For instance, Defendant's agents blocked egress and ingress to Europa's property, intimidated and harassed employees to prevent them from going to work, and stopped customers from doing business with Europa. (*Id.*) Agents of Defendant also unlawfully entered or trespassed into the internal areas of Europa's physical facility and physically commandeered the shop to interrupt and interfere with business operations. (*Id.*)

In addition, an agent of Defendant and a picketer holding a Union picket sign hit a customer's car driven by an employee that was entering Europa's property. (*Id.*) They stopped the vehicle from entering the driveway of the facility while Robert Moreno, one of the fellow picketers, repeatedly struck the hood and windshield of the vehicle to intimidate and place fear into a non-bargaining unit employee as well as other employees. (*Id.*) The attack caused significant damage to the customer's hood and windshield causing in excess of $3,000.00 of damages. (*Id.*) According to the complaint, Defendant's conduct violated federal and state law and the terms of the CBA. (*Id.*)

Plaintiff alleges it filed a grievance and/or made a demand for arbitration regarding the dispute between the parties on May 24, and May 31, 2022. (*Id.*) It further contends that Defendant filed its own grievance on July 20, 2022 but has failed to proceed through its own filed grievance. (*Id.*) Defendant's violations of the CBA have disrupted Europa's business of providing retail sales and service to high-end consumer and commercial vehicles and it has suffered irreparable loss and damages. (*Id.* ¶¶ 22, 23.) Due to the strike, Plaintiff has secured permanent, temporary, stopgap and conditional

22cv1987GPC(BGS)

1 labor to maintain its operations during the strike which resulted in further damages to
2 Plaintiff.  (*Id.* ¶ 24.)
3       Defendant filed a motion to dismiss for lack of subject matter jurisdiction and
4 failure to state a claim which is fully briefed.  (Dkt. Nos. 4, 7, 10.)

## Discussion

**A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Here, while not articulated by Defendant, it appears to be mounting a factual attack on subject matter jurisdiction because Defendant relies on evidence outside the complaint.

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a factual attack, the allegations in the complaint are not presumed to be true, *White*, 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union H.S., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *See id.*  However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)

(citations omitted). Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

**B.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged

5

22cv1987GPC(BGS)

pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**C.     First Cause of Action – Breach of Contract under Section 301(a) of the LMRA**

The complaint alleges that federal subject matter jurisdiction exists under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Dkt. No. 1, Compl. ¶ 2.)

Section 301(a)[2] of the LMRA confers the Court with subject matter jurisdiction over "[s]uits for violation of contracts." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of America, Int'l. Union*, 523 U.S. 653, 656 (1998). "Section 301(a) is a basis for jurisdiction when the suit is based on a colorable claim of breach of contract between an employer and a labor organization in an industry affecting commerce and the resolution of the lawsuit is focused upon and governed by the terms of the contract." *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay Cntys., Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983).

Moreover, "[a]n expired CBA itself is no longer a 'legally enforceable document.'" *Off. & Pro. Employees Ins. Trust Fund v. Laborers Funds Admin. Off. of N. Cal., Inc.*, 783 F.2d 919, 922 (9th Cir. 1986) (quoting *Cement Masons Health and Welfare Trust Fund For N, Cal. v. Kirkwood-Bly, Inc.*, 520 F. Supp. 942, 944-45 (N.D. Cal. 1981), *aff'd*, 692 F.2d 641, (9th Cir. 1982)); *Lumber Prod. Indus. Workers Loc. No. 1054 v. W.*

---

[2] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

*Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 1046 (9th Cir. 1985) ("It logically follows that an expired [collective bargaining] agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a)"); *Cement Masons Health and Welfare Trust Fund v. Kirkwood–Bly, Inc.*, 520 F. Supp. 942, 946 (N.D. Cal. 1981) ("Plaintiffs cite no case, nor can we find any, which ha[s] permitted district courts to enforce properly expired collective bargaining agreements in a section 301 action"), *aff'd*, 692 F.2d 641 (9th Cir. 1982). As a general rule, where the bargaining contract at issue has expired, the parties are "released . . . from their respective contractual obligations" and any dispute between them cannot be said to arise under the contract. *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991).

Here, the parties entered into a CBA effective May 1, 2019 through April 30, 2022. (Dkt. No. 4-2, Kucera Decl., Ex. A, CBA § 33.01.) The relevant provisions of Section 33 of the CBA provide:

> 33.01 . . . From and after April 30, 2022, *this Agreement shall continue for yearly terms commencing with said date unless either of the parties give written notice* to the other no later than sixty (60) calendar days and no earlier than ninety (90) calendar days immediately prior to said date and each May 1st thereafter, *expressing the desire of said party to terminate or revise and amend said Agreement*.
>
> 33.02 In the event of a notice desiring to revise and amend said Agreement, said notice shall not serve to terminate this Agreement, but merely to provide the necessary procedure for the revision of the Agreement to conform to changed conditions; it being the intent and agreement of the parties that upon the expiration of any yearly term, the following yearly term shall automatically take effect, irrespective of whether or not notice of revision is given; if no notice of desire to amend is given, the provisions of the Agreement for the new term shall be the same as the preceding term.
>
> 33.03 If notice of desire to amend is given, the changes arrived at by reason of said notice shall become effective upon the date agreed to by the parties. Pending the resolving of the desired changes under consideration, the provisions of the expiring term shall continue in effect as the operative Agreement of the parties. There shall be no cessation of work or lockout during such conferences.

(*Id.* §§ 33.01, 33.02, 33.03 (emphasis added).)  The CBA also provides:

> SECTION 32. NO STRIKE, NO LOCKOUT
>
> 32.01 During the term of this Agreement, the union agrees that it will not authorize, cause, induce, support or condone any strike, picketing, sympathy strike, work stoppage, slowdown of work or walk out by any employee covered by this Agreement; however, it shall not be a violation of this Agreement for any person covered by this Agreement to refuse to cross any lawful primary picket line.
> 32.02 No employee shall be permanently replaced because of his honoring such lawful primary picket line, providing he is available for work immediately following withdrawal of the primary picket line.
> 32.03 The employer agrees that there will be no lockouts during the term of this Agreement.

(*Id.* §§ 32.01, 32.02.)

### 1.     Union Conduct After April 30, 2022

In its motion, the Union argues that the Court lacks subject matter jurisdiction over the Section 301 claim because the CBA terminated on April 30, 2022 and it had the right to strike on May 1, 2022 because it sent a notice of termination per Section 33.01 around February 1, 2022.  (Dkt. No. 4-1 at 14-16.[3])  In opposition, Plaintiff does not factually dispute that the Union sent it a written notice of termination nor its interpretation of the CBA that a notice of termination ended the agreement and did not extend the terms of the CBA.  (*See* Dkt. No. 7.)  Instead, Plaintiff procedurally challenges the Union's reliance on extrinsic evidence of the Union's notice of termination on a motion to dismiss.  (*Id.* at 10-11; 18-19.)

However, a district court may properly consider extrinsic evidence on a "factual" motion to dismiss under Rule 12(b)(1), *see Savage*, 343 F.3d at 1039 n.2, but it may not decide genuinely disputed facts where "the question of jurisdiction is dependent on the

---

[3] Page numbers are based on the CM/ECF pagination.

resolution of factual issues going to the merits." *Roberts*, 812 F.2d at 1177.  Because Defendant raises a factual attack on subject matter jurisdiction and Plaintiff does not dispute the existence and effect of the written notice of termination, the Court may consider it.

Around February 1, 2022, the Union sent Plaintiff a letter notifying that it desired "to terminate our Agreement, which expires April 30, 2022, and negotiate a new Agreement covering wages, hours and other working conditions." (Dkt. No. 4-2, Kucera Decl. ¶¶ 4, 5.[4])  Per the terms of Section 33.01, the terms of the CBA did not survive the expiration of the CBA on April 30, 2022.  Thus, Plaintiff has failed to make a showing that any of the challenged conduct after April 30, 2022 arise under the CBA and has not asserted a basis for the Court's jurisdiction under Section 301(a).  As such, the Court GRANTS Defendant's motion to dismiss any conduct allegedly violative of the CBA that occurred after April 30, 2022 for lack of subject matter jurisdiction.

Plaintiff also argues that irrespective of the CBA, an unlawful slowdown is in violation of federal law citing primarily to NLRB cases concerning unfair labor practices rather than breach of a CBA. (Dkt. No. 7 at 14-15.)  Those cases do not provide authority for the Court's jurisdiction over the Complaint's allegations under Section 301.

Plaintiff next makes a claim that the CBA continued in full force under post-termination status quo principles.  (Dkt. No. 7 at 10).  First, Plaintiff fails to point to a provision in the CBA that would allow for the continuation of the terms of the CBA past April 30, 2022.  In the complaint, Plaintiff alleges that Section 33 of the CBA provides that if the parties were still meeting and negotiating a new contract, the provisions of the CBA continued after April 30, 2022 and remained binding upon the parties. (Dkt. No. 1, Compl. ¶¶ 13, 14.)  The complaint selectively quotes a portion of Section 33.03 which

---

[4] Defendant clarifies that the date on the termination letter as well as the date written by the person who signed the return receipt form were mistakenly written as February 1, 2021 instead of February 1, 2022. (Dkt. No. 4-2, Kucera Decl. ¶¶ 4, 5; Dkt. No. 4-2, Kucera Decl., Exs. B, C.)  Plaintiff does not dispute that the date of the termination letter was February 1, 2022.

provides that "[p]ending the resolving of the desired changes under consideration" the provisions of the expiring term shall continue in effect. There shall be no cessation of work or lockout during such conferences." (*Id.* ¶14.) However, under Section 33.03, this continued CBA provision only applies if written "notice of desire to amend" is given by either of the parties. The complaint does not allege that either party gave written notice of a desire to amend the CBA. Plaintiff has not asserted sufficient facts to support the claim that the CBA continued in effect past April 30, 2022.

Second, Plaintiff fails to provide any caselaw in support of the status quo principles. Third, to the extent Plaintiff is arguing that the status quo principles are guided by the National Labor Relations Act ("NLRA"), the Complaint does not allege, nor is it clear that it can assert, the Court's jurisdiction based on a statutory claim. *See Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994) ("If the conduct arguably falls within the scope of the Act, then the interest in a uniform federal labor policy identified in *Garmon*[5] requires both the states and the federal courts to defer to the exclusive jurisdiction of the NLRB."); *cf. N.L.R.B. v. Nexstar Broadcasting, Inc.*, 4 F.4th 801, 806 (9th Cir. 2021) (as to an employer's conduct, recognizing that after a CBA expires, the "terms and conditions [of employment] continue in effect by operation of the NLRA. They are no longer agreed-upon terms; they are terms imposed by law, at least so far as there is no unilateral right to change them").

### 2. Union Conduct Prior to April 30, 2022

As to conduct prior to the expiration of the CBA, Plaintiff asserts that the Union materially breached the CBA in April 2022 by directing a work slowdown. (Dkt. No. 7 at 11-13.) The complaint alleges a breach of the CBA by the Union's involvement in directing a work slowdown among the bargaining unit employees in April 2022, prior to its expiration. (*See* Dkt. No. 1, Compl. ¶ 17.) Europa provides the declaration of two of

---

[5] *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

its Union employees attesting that Kevin Kucera, the Union representative, implicitly encouraged a work slowdown in mid-April 2022 and that Pedro Gomez, the Shop Steward, also directed the employees to decrease productivity in early April 2022 to support the Union's bargaining demands.  (Dkt. No. 7-3, Cikos Decl. ¶¶ 8-10; Dkt. No. 7-4, Irwin Decl. ¶¶ 6-7.)  Michael Ritchey, the General Manager of Europa, also declared that from mid-April 2022 until the end of May 2022, the Union instructed bargaining unit members to go to work, be paid but not to produce work at normal levels.  (Dkt. No. 7-2, Ritchey Decl. ¶ 6.)  The work slowdown cost Europe hundreds of thousands of dollars in lost income.  (*Id.*)  In reply, the Union does not dispute that the slowdown allegations fall within the terms of the CBA.  (*See* Dkt. No. 10.)  Therefore, breach of the CBA based on the work slowdown alleged in April 2022 falls within Section 301 and the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction any conduct allegedly violative of the CBA that occurred in April 2022.

**D.     Exhaustion of the Grievance Procedures**

Defendant additionally argues the slowdown allegations of April 2022 must be dismissed because Europa failed to exhaust the grievance procedures of the CBA.  (Dkt. No. 10 at 4.)  Plaintiff responds that it invoked the CBA's grievance procedure as to the illegal work slowdown.  (Dkt. No. 7 at 16-17.)

While Defendant argues that a failure to exhaust affects the Court's subject matter jurisdiction, (Dkt. No. 4-1 at 17; Dkt. No. 10 at 4), the Ninth Circuit has held that a failure to exhaust non-judicial remedies does not fall within a Rule 12(b)(1) motion. *Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1078 n.2 (9th Cir. 2002) (citing *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988) (*per curiam*), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014)).  In *Albino*, the Ninth Circuit held that a failure to exhaust remedies must be raised as a Rule 12(b)(6) or Rule 56 motion and not as an unenumerated Rule 12(b) motion.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).  The Ninth Circuit offered two ways a party may raise a party's failure to exhaust.

First, "where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.* at 1169.  "Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden.  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

Here, neither party has produced evidence as it relates to exhaustion of the grievance procedures; therefore, the Court looks at whether the complaint alleges exhaustion of the CBA's grievance procedures under a Rule 12(b)(6) standard.

"As a general rule in cases to which federal law applies, federal labor policy requires . . . use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).  In passing Section 301, Congress' intent was to encourage mutually agreed upon grievance procedures between the parties in a collective bargaining agreement to "promote a higher degree of responsibility upon the parties to such agreements . . . thereby promot[ing] industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL–CIO*, 370 U.S. 254, 263 (1962) (quoting S. Rep. No. 105, 80th Cong., 1st Sess. 17).  Neither party disputes that a party must exhaust the grievance procedures agreed upon in the CBA prior to filing a complaint in this Court.

In this case, the grievance provision is broad and covers "any difference[s that] arise concerning the provisions of this Agreement."  (Dkt. No. 4-1, Kucera Decl., Ex. A, CBA § 7 at 10.)  If the dispute "cannot satisfactorily be adjusted by the Business Representative of the Union and the Employer, the written dispute shall be submitted in writing . . . to an adjustment board . . . ."  (*Id.*)  "In the event of the failure of the adjustment board to reach an agreement within fifteen (15) working days after appointment, it shall lose jurisdiction and the matter may be referred to an impartial arbitrator to be mutually selected by the Union and the Employer.  In the event the

Employer and the Union are unable to agree upon the selection of the arbitrator within ten (10) working days, the Federal Mediation and Conciliation Service shall be petitioned to submit a panel of five (5) arbitrators. Each of the parties shall delete the names of two (2) of the panel members and the remaining arbitrator shall decide the issue." (*Id.* at 11.)

Here, the complaint summarily alleges that Plaintiff filed a "grievance with Defendant and/or made a demand for arbitration concerning any such dispute between the parties on May 24 and May 31, 2022." (Dkt. No. 1, Compl. ¶ 19; *see id.* Compl. ¶ 28 ("Plaintiff exhausted all procedures available to it prior to resorting to this complaint seeking monetary and injunctive relief.").) However, the complaint fails to allege whether the April 2022 slowdown was subject to the grievance submitted by Plaintiff on May 24 and May 31, 2022 and fails to allege that it complied with the grievance procedure as provided in the CBA. *See e.g., Woodford v. Ngo,* 548 U.S. 81, 90 (2006) ("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]").

Accordingly, the Court GRANTS Defendant's motion to dismiss for failure to allege proper exhaustion regarding the work slowdown allegations.

E.     **Remaining State Law Claims**

The second through sixth causes of action allege state law claims for 1) tortious interference with prospective economic advantage and contractual business relations, 2) trespass to chattel, 3) trespass to real property, 4) defamation, and 5) unfair business practices. (Dkt. No. 1, Compl. at p. 7-12.) All these causes of action appear to arise from the strike that began on June 16, 2022. (Dkt. No. 1, Compl. ¶¶ 27, 27(f), 32, 35, 38 ("[d]uring the picketing", "[a]s part of its strike", "[d]uring and throughout the course of the strike", "unlawfully . . . entered into non-public areas of Plaintiff's during work time . . . and intimate workers who were not striking", "during the strike".)

A district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because the Court is without original federal question jurisdiction over any conduct after April 30, 2022, the Court lacks supplemental jurisdiction over the state law claims which are based a strike that began on June 16, 2022. *See id.; see also* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction").

Accordingly, because the Court lacks supplemental jurisdiction over the state law claims for lack of subject matter jurisdiction and for failing to allege exhaustion, it *sua sponte* GRANTS dismissal of them.[6] *See Acri v. Varian Assocs., Inc*., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (*en banc*) (district courts may decline *sua sponte* to exercise supplemental jurisdiction).

However, to the extent the UCL claim can be liberally inferred to be based on conduct prior to April 30, 2022, it also fails to state a claim. The complaint simply alleges a UCL violation based on the actions of Defendant which caused Plaintiff to suffer an "injury in fact." (Dkt. No. 1, Compl. ¶¶ 42-47.) Plaintiff does not allege any specific conduct or any specific time period and merely refers to the "above-described unlawful actions." (*Id.*)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013). "The UCL operates as a three-pronged statute: 'Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir 2016) (quoting *Rubio v. Capital*

---

[6] Because the Court lacks supplemental jurisdiction over the state law claims, the Court need not address Defendant's arguments to dismiss the state law claims based on the Norris-Laguardia Act and *Garmon* preemption, *see San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959). (Dkt. No. 4-1 at 18-28.)

*One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010)).  Plaintiff appears to be alleging a claim under the "unlawful" prong of the UCL.

Under the "unlawful" prong, "[t]he UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Wilson v. Hewlett–Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180, (1999)).  However, Plaintiff has not alleged the "other laws" that will serve as a predicate to this cause of action.  To the extent Plaintiff alleges that a breach of contract constitutes the "other law", it is without merit.  *See Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1044 (9th Cir. 2010) ("a common law violation such as a breach of contract is insufficient . . . under the unlawful prong of § 17200"); *Meyer v. Aabaco Small Bus., LLC,* No. 17-cv-02102-EJD, 2018 WL 306688, at *4 (N.D. Cal. Jan. 5, 2018) (following *Shroyer* and dismissing UCL "unlawful" claim predicated on common-law breach-of-contract claim).

Moreover, to the extent Plaintiff is seeking injunctive relief under the UCL, (Dkt. No. 1, Compl at p. 12), it must plausibly allege "an inadequate remedy at law."  *See Fiero v. Fierro v. Capital One, N.A.*, -- F. Supp. 3d --, 2023 WL 1999482, at *6 (S.D. Cal. Feb. 14, 2023) (citing *Shay v. Apple*, No. 20-cv-1629-GPC(BLM), 2021 WL 1733385, at *2–5 (S.D. Cal. May 3, 2021)).  The complaint fails to allege an inadequate remedy at law.

Accordingly, to the extent Plaintiff alleges a UCL claim based on conduct prior to April 30, 2022, it fails to state a claim.

**F.     Leave to Amend**

In the event the Court grants dismissal of any claim under Rule 12(b)(6), Plaintiff demands that leave of Court be granted to file an amended complaint to cure the deficiencies.  (Dkt. No. 7 at 33.)  Because amending the complaint would not be futile as to exhaustion, the Court GRANTS Plaintiff leave to file an amended complaint to properly allege exhaustion concerning the work slowdown claim.  *See DeSoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**G.   Defendant's Motion to Dismiss State Law Claims under the anti-SLAPP**

Defendant also concurrently filed a motion to dismiss the state law claims under California Code of Civil Procedure section 425.16 ("anti-SLAPP" statute) which permits special motions to strike strategic lawsuits against public participation for conduct relating to the protected activity of striking and picketing at Europa's car dealership that began on June 17, 2022, which is fully briefed. (Dkt. Nos. 5, 8, 9.) Because the Court GRANTS dismissal of the state law claims for lack of supplemental jurisdiction, it DENIES Defendant's motion to strike the state law claims as MOOT.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss for lack of subject matter jurisdiction. Specifically, the Court GRANTS Defendant's motion to dismiss the first cause of action based on any allegations of breaching conduct after April 30, 2022 but DENIES the motion to dismiss the first cause of action based on the work slowdown allegation that occurred before April 30, 2022. The Court also GRANTS Defendant's motion to dismiss the first cause of action for failing to properly allege exhaustion of the grievance process in the CBA concerning the work slowdown with leave to amend. The Court also DISMISSES the state law claims for lack of supplemental jurisdiction. Plaintiff shall file an amended complaint within **14 days** of the date of the order.

Finally, the Court DENIES Defendant's motion to dismiss the state law claims under the anti-SLAPP statute as MOOT. (Dkt. No. 5.)

IT IS SO ORDERED.

Dated: July 20, 2023

Hon. Gonzalo P. Curiel
United States District Judge