1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  EUROPA AUTO IMPORTS, INC. d/b/a        Case No.:  22cv1987-GPC(BGS)
    MERCEDES-BENZ OF SAN DIEGO,
12                                          **ORDER DENYING DEFENDANT'S**
                            Plaintiff,      **MOTION TO DISMISS FIRST**
13                                          **AMENDED COMPLAINT FOR**
    v.                                      **LACK OF SUBJECT MATTER**
14                                          **JURISDICTION AND GRANTING**
    INTERNATIONAL ASSOCIATION OF            **DEFENDANT'S MOTION TO**
15  MACHINISTS AND AEROSAPCE                **DISMISS FOR FAILURE TO STATE**
    WORKERS LOCAL LODGE NO. 1484,           **A CLAIM WITH LEAVE TO**
16  MACHINISTS AUTOMOTIVE                    **AMEND**
    TRADES DISTRICT LODGE 190 and
17  DOES 1 through 50, inclusive,
                                            **[Dkt. No. 18.]**
18
                            Defendants.
19

20

21         Before the Court is Defendant's motion to dismiss the first amended complaint

22  pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 18.)

23  Plaintiff filed a response on September 15, 2023.  (Dkt. No. 22.)  A reply was filed by

24  Defendant on September 29, 2023.  (Dkt. No. 23.)  The Court finds that the matter is

25  appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).

26

27

28

                                            1

Based on the reasoning below, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction and GRANTS Defendant's motion to dismiss for failure to state a claim with leave to amend.[1]

## Background

On December 15, 2022, Plaintiff Europa Auto Imports, Inc. d/b/a Mercedes-Benz of San Diego ("Plaintiff" or "Europa") filed a complaint against Defendant International Association of Machinists and Aerospace Workers Local Lodge No. 1484, Machinists Automotive Trades District Lodge 190 ("Defendant" or "Union") for breach of the collective bargaining agreement and related claims.  (Dkt. No. 1, Compl.)  On July 20, 2023, the Court granted in part and denied in part Defendant's motion to dismiss for lack of subject matter jurisdiction and granted Defendant's motion to dismiss for failure to state a claim with leave to amend.  (Dkt. No. 12.)  Plaintiff filed a first amended complaint ("FAC") on August 3, 2023 alleging 1) breach of the collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; 2) unfair labor practice causing injury to business or property pursuant to Section 303 of the LMRA, 29 U.S.C. § 187; 3) tortious interference with prospective economic advantage and contractual business relations; 4) trespass to chattel; 5) trespass to real property; 6) defamation; and 7) unfair competition under California Business & Professions Code section 17200 *et seq*.  (Dkt. No. 13, FAC.)

According to the FAC, Europa and the Union entered into a written collective bargaining agreement ("CBA") effective May 1, 2019 until April 30, 2022.  (*Id.* ¶ 13.) Prior to April 30, 2022 and continuing through July 2022, both parties held bargaining sessions to amend the CBA to agree on terms for a new contract.  (*Id.* ¶ 34.)  The no

---

[1] Defendant filed a request for judicial notice of the unfair labor practice charges filed by the Union on July 1, 2022, (21-CA-298789), and July 7, 2022, (21-CA-298926), as well as a complaint by the Regional Director of Region 21 of the National Labor Relations Board ("NLRB").  (Dkt. No. 18-2; Dkt. No. 18-3, Fujimoto Decl.)  Because the Court did not rely on these documents in its ruling, the Court DENIES Defendant's request for judicial notice as moot.

strike provision of section 32 of the CBA prohibits the Union from engaging in any "strike, picketing, sympathy strike, work stoppage, slowdown of work or walk" during the term of the CBA.  (*Id.* ¶ 33.)  Beginning in April 2022, "the Union planned, organized, caused and directed an illegal work slowdown and work stoppages and/or false sickouts among the bargaining unit employees . . . ."  (*Id.* ¶ 35.)  Plaintiff maintains that the Union breached the CBA.  (*Id.*)

On May 31, 2022, Plaintiff submitted a timely grievance with the Union and/or made a demand for arbitration but Defendant has failed to comply even though the breach occurred prior to the expiration of the CBA.  (*Id.* ¶ 36.)  Europa further alleges that the work slowdown was done for economic purposes and not for any unfair labor practice.  (*Id.* ¶ 38.)  Due to the Union's breach of the CBA, Europa has been prevented from timely sales and service of vehicles and has incurred and will incur substantial costs and expenses due to the illegal work slowdown and stoppage.  (*Id.* ¶ 39.)  Plaintiff has secured permanent, temporary, stopgap and conditional labor to maintain its operations during the strike resulting in additional damages.  (*Id.* ¶ 41.)

Defendant filed a motion to dismiss the FAC for lack of subject matter jurisdiction and failure to state a claim which is fully briefed.  (Dkt. Nos. 18, 22, 23.)

## Discussion

### A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Here, as with the prior motion to dismiss, Defendant does not articulate what type of challenge it is seeking.  As before, Defendants appears to be mounting a factual attack on subject matter jurisdiction because it relies on evidence outside the complaint.

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction.  *Safe Air for*

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a factual attack, the allegations in the complaint are not presumed to be true, *White*, 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union H.S., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *See id.*  However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).  Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

**B.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**C.    First Cause of Action –Section 301(a) of the LMRA**

The FAC asserts a Section 301 claim under the LMRA alleging breach of the no-strike provision of the CBA when the Union directed a work slowdown, work stoppage and/or false sickouts in mid-April 2022, prior to the expiration of the CBA. (Dkt. No. 13, FAC ¶¶ 33, 35.)

The Union raises three challenges seeking dismissal of the first cause of action. First, it argues that the Court lacks subject matter jurisdiction because Europa alleges a

breach that occurred after the expiration of the CBA.  (Dkt. No. 18-1 at 12.[2])
Alternatively, the Union contends that the Court lacks subject matter jurisdiction because
the issue is not ripe since Europa did not exhaust contractual grievance remedies.  (*Id.* at
12, 14-15.)  Further, the Union maintains that the FAC fails to allege exhaustion of
contractual grievance remedies under rule 12(b)(6).  (*Id.* at 15.)

### 1. Rule 12(b)(1) - Subject Matter Jurisdiction

According to the FAC, federal subject matter jurisdiction exists under Section
301(a) of the LMRA, 29 U.S.C. § 185(a).  (Dkt. No. 13, FAC ¶ 2.)

Section 301(a)[3] of the LMRA confers the Court with subject matter jurisdiction
over "[s]uits for violation of contracts."  *Textron Lycoming Reciprocating Engine Div.,
Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of America, Int'l.
Union*, 523 U.S. 653, 656 (1998).  "Section 301(a) is a basis for jurisdiction when the suit
is based on a colorable claim of breach of contract between an employer and a labor
organization in an industry affecting commerce and the resolution of the lawsuit is
focused upon and governed by the terms of the contract."  *Painting & Decorating
Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay
Cntys., Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983).

Moreover, "[a]n expired CBA itself is no longer a 'legally enforceable document.'"
*Off. & Pro. Employees Ins. Trust Fund v. Laborers Funds Admin. Off. of N. Cal., Inc.*,
783 F.2d 919, 922 (9th Cir. 1986) (quoting *Cement Masons Health and Welfare Trust
Fund For N, Cal. v. Kirkwood-Bly, Inc.*, 520 F. Supp. 942, 944-45 (N.D. Cal. 1981),
*aff'd*, 692 F.2d 641, (9th Cir. 1982)); *Lumber Prod. Indus. Workers Loc. No. 1054 v. W.
Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 1046 (9th Cir. 1985) ("It logically

---

[2] Page numbers are based on the CM/ECF pagination.

[3] "Suits for violation of contracts between an employer and a labor organization representing employees
in an industry affecting commerce as defined in this chapter, or between any such labor organizations,
may be brought in any district court of the United States having jurisdiction of the parties, without
respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. §
185(a).

follows that an expired [collective bargaining] agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a)"); *Cement Masons Health and Welfare Trust Fund v. Kirkwood–Bly, Inc.*, 520 F. Supp. 942, 946 (N.D. Cal. 1981) ("Plaintiffs cite no case, nor can we find any, which ha[s] permitted district courts to enforce properly expired collective bargaining agreements in a section 301 action"), *aff'd*, 692 F.2d 641 (9th Cir. 1982).  As a general rule, where the bargaining contract at issue has expired, the parties are "released . . . from their respective contractual obligations" and any dispute between them cannot be said to arise under the contract.  *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991).

Here, the parties entered into a CBA effective May 1, 2019 through April 30, 2022. (Dkt. No. 13, FAC ¶ 13; Dkt. No. 4-2, Kucera Decl., Ex. A, CBA § 33.01.) Relevant to this case, the CBA also provides:

> SECTION 32. NO STRIKE, NO LOCKOUT
>
> 32.01 During the term of this Agreement, the union agrees that it will not authorize, cause, induce, support or condone any strike, picketing, sympathy strike, work stoppage, slowdown of work or walk out by any employee covered by this Agreement; however, it shall not be a violation of this Agreement for any person covered by this Agreement to refuse to cross any lawful primary picket line.

(*Id.* § 32.01.)

The Union argues that the Court lacks subject matter jurisdiction because Europa alleges a breach that occurred in May 2022 after the expiration of the CBA.  (Dkt. No. 18-1 at 12.)  It relies on Europa's grievance email sent on May 31, 2022 alleging breaching conduct that occurred in May 2022 after the CBA expired.  (*Id.*)  Europa responds that the allegations in the complaint "corroborated by declarations submitted

with this Opposition"[4] establish that the Union materially breached the CBA in mid-April 2022.  (Dkt. No. 22 at 6.)

In its prior order, relying on the complaint and the declarations of two Union employees and the General Manager of Europa, the Court concluded that the alleged breach of the CBA based on the work slowdown alleged in April 2022, prior to the expiration of the CBA, survived and denied dismissal of the Section 301.  (Dkt. No. 12 at 11.)  The FAC similarly alleges breach of the CBA based on the Union directed slowdown beginning in mid-April 2022.  (Dkt. No. 13, FAC ¶ 16.)  In its opposition, Europa relies on the declarations filed with its prior opposition to the motion to dismiss. Based on the Court's prior ruling, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction.[5]

## 2.    Rule 12(b)(1) - Ripeness

Alternatively, Defendant argues that the Court lacks subject matter jurisdiction because the Section 301 claim is not ripe as Europa failed to exhaust contractual grievance remedies.  (Dkt. No. 18-1 at 12, 14.)  Europa does not directly address the ripeness issue but argues that it invoked the grievance process on May 31, 2022 and the CBA does not require arbitration where the Union has refused to convene an adjustment board.  (Dkt. No. 22 at 6-12.)

The Court is not persuaded by the Union's ripeness argument.  The authorities relied on by the Union involve motions to stay pending arbitration or petitions to compel

---

[4] Plaintiff references declarations submitted with the opposition; however, no declarations are attached. (*See* Dkt. No. 22.)  Presumably, Plaintiff is referencing the declarations of two Union employees and the General Manager of Europa stating that the Union implicitly and explicitly encouraged a work slowdown in mid-April 2022 that was filed in connection with its opposition to the prior motion to dismiss.  (Dkt. No. 7-3, Cikos Decl; Dkt. No. 7-4, Irwin Decl.; Dkt. No. 7-2, Ritchey Decl.)

[5] The parties dispute the interpretation of the May 31, 2022 email concerning when the alleged unlawful conduct occurred; however, the Court need not address the dispute because it already ruled that Europa had sufficiently alleged a breach of the CBA in April 2022 as it concerned the work stoppage. Moreover, to the extent the May 31, 2022 grievance email raises a disputed issue of fact on jurisdiction, the Court may not resolve it at this stage of the proceedings.  *See Roberts,* 812 F.2d at 1177.

arbitration and do not address the Court's subject matter jurisdiction.  (*See* Dkt. No. 18-1 at 11 n. 2; *id.* at 15 n.5.)  Neither does the Union's argument that the United States Supreme Court's use of "moot" to illustrate that the Supreme Court views the issue of exhaustion as jurisdictional in *Clayton v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 451 U.S. 679, 692 (1981), support its ripeness argument. (Dkt. No. 18-1 at 15 n.5.)  The Court in *Clayton* addressed a circuit conflict as to whether "an employee should be required to exhaust internal union appeals procedures before bringing suit against a union or employer under § 301" and held "that where an internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union." *Clayton*, 451 U.S. at 686.  The Court's use of "moot" was not in the context of subject matter jurisdiction nor ripeness and this Court declines to rely on *Clayton* to support the Union's ripeness argument.  Therefore, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction based on ripeness as not legally supported.

### 3.    Rule 12(b)(6) - Failure to Exhaust Contractual Grievances

Additionally, the Union argues that the first cause of action for breach of the CBA fails for insufficiently alleging exhaustion of contractual grievance procedures in the CBA.  (Dkt. No. 18-1 at 15-16.)

#### a.    Legal Framework

The Ninth Circuit has recognized that failure to exhaust is an affirmative defense that must be properly pled and proven at the summary judgment stage.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).   However, if a failure to exhaust is "clear on the face of the complaint", a defendant may move to dismiss under Rule 12(b)(6).  *Id.* at 1166.  Although *Albino* addressed a Prison Litigation Reform Act ("PLRA") case, the court made clear that these procedures are appropriate in all contexts where exhaustion applies and explicitly included LMRA claims.  *Id.* at 1171 (*overruling Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1078 n. 2 (9th Cir. 2002) (exhaustion of

9

non judicial remedies under the Labor Management Relations Act ("LMRA") and *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam) (LMRA)); *see also United Ass'n of Journeyman and Apprentices of the Plumbing and Pipe Fitting Indus., Underground Utility/Landscape Local Union No. 355 v. Maniglia Landscape, Inc.*, Case No. 17-cv-03037-RS, 2017 WL 11500057, at *4 (N.D. Cal. Oct. 26, 2017) (citing *Albino,* 747 F.3d at 1171); *Patrick v. Nat'l Football League*, Case No. CV 23-1069-DMG (SHKx), 2023 WL 6162672, at *2 (C.D. Cal. Sept.. 21, 2023) (applying *Albino* framework to motion to dismiss) (citing A*vila v. Sheet Metal Workers Loc. Union No. 293*, 400 F. Supp. 3d 1044, 1059 (D. Haw. 2019) (applying *Albino v. Baca* framework to motion to dismiss in LMRA case); *Jay v. Serv. Emps. Int'l Union-United Health Care Workers W.*, 203 F. Supp. 3d 1024, 1041 (N.D. Cal. 2016) (*same*)).  Further, the burden to prove exhaustion falls on the defendant.  *See Albino*, 747 F.3d at 1166 ("Failure to exhaust . . . is an affirmative defense the defendant must plead and prove") (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)) (internal citations omitted)).  However, the burden of demonstrating that exhaustion would be futile falls on the plaintiff.  *See Albino*, 747 F.3d at 1172 ("the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile") (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

Because Defendant raises Europa's failure to exhaust under Rule 12(b)(6), the Court looks at whether the failure to exhaust is apparent on the face of the FAC.[6]

/ / /

/ / /

---

[6] The Union does not object to the Court's prior reliance on *Albino* on the procedure to apply when exhaustion is raised.  However, it argues this case is akin *Clayton* where an aggrieved employee sought relief under Section 301 against his employer for breach of contract and against his union for breaching the duty of fair representation and should be followed by this Court.  (Dkt. No. 23 at 8 n.4.)  However, besides its own opinion, the Union fails to provide any legal authority that *Clayton* applies to the instant case where an employer brings a Section 301 claim against the union.

### b.  Extrinsic Evidence on Rule 12(b)(6)

To support its failure to exhaust defense, the Union relies on email communications between Kevin Kucera, the Business Representative of Defendant, and Roman Zhuk, Senior Vice President of Human Resources and Legal Counsel for Plaintiff, (Dkt. No. 18-5, Kucera Decl., Ex. A), dated May 24, 2022 through June 7, 2022, arguing that they are proper for the Court's consideration under the incorporation by reference doctrine.  (Dkt. No. 18-1 at 15.)  The Union also argues that the emails between Jesse Juarez, Area Director of Organizing and Mr. Zhuk from June 13, 2022 through June 24, 2022, (Dkt. No. 18-5, Kucera Decl., Ex. B), should also be considered under the same doctrine.  (*Id*.)

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside of the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.*

Under the incorporation-by-reference doctrine, the court may consider documents that are referenced in the complaint as though they are part of the complaint.  *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018).  Its purpose is to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Id.* (citation omitted).  Documents may be incorporated by reference in the complaint when "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citations omitted); *Ritchie*, 342 F.3d at 908(a document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the

basis of the plaintiff's claim"). The contents of the documents may be assumed to be true for purposes of ruling on a Rule 12(b)(6) motion. *Ritchie,* 342 F.3d at 908; *In re NVIDIA Corp. Sec. Litig.,* 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) ("Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents."). Documents incorporated by reference may be considered as "part of the complaint," without converting the Rule 12(b)(6) motion into one for summary judgment. *Ritchie*, 342 F.3d at 908.

In this case, the emails dated May 24, 2022 through June 7, 2022 between Mr. Kucera and Mr. Zhuk are specifically referenced and selectively quoted in the FAC and form the basis of Europa's claim that it exhausted contractual grievance remedies. (Dkt. No. 13, FAC ¶¶ 18-23.) Further, no party disputes the authenticity of the email exchanges. Therefore, the Court considers the email exchange between Mr. Kucera nd Mr. Zhuk under the incorporation by reference doctrine without converting the motion to dismiss into a motion for summary judgment. However, the emails between Mr. Juarez and Mr. Zhuk are not referenced or cited in the FAC and while they may support whether Plaintiff exhausted contractual remedies, they are not properly considered under the incorporation by reference doctrine. Therefore, the Court declines to consider the Juarez/Zhuk emails for purposes of determining whether Europa has sufficiently alleged exhaustion of mandatory contractual grievance procedures.

### c. Exhaustion of Mandatory Contractual Grievance Procedure

"As a general rule in cases to which federal law applies, federal labor policy requires . . . use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). In passing Section 301, Congress' intent was to encourage mutually agreed upon grievance procedures between the parties in a collective bargaining agreement to "promote a higher degree of responsibility upon the parties to such agreements . . . thereby promot[ing] industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery*

*Workers Int'l, AFL–CIO*, 370 U.S. 254, 263 (1962) (quoting S. Rep. No. 105, 80th Cong.,
1st Sess. 17).  Therefore, mandatory grievance and arbitration procedures contained in a
collective bargaining agreement must be exhausted before bringing a lawsuit under
Section 301 of the LMRA.  *See Republic Steel Corp.*, 379 U.S. at 652; *Carr v. Pac. Mar.
Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) ("As a general rule, members of a collective
bargaining unit must first exhaust contractual grievance procedures before bringing an
action for breach of the collective bargaining agreement.").

Here, neither party disputes that a party must exhaust the grievance procedures
agreed upon in a CBA prior to filing a complaint in this court.  Section 7 of the CBA
covers "any difference[s that] arise concerning the provisions of this Agreement."  (Dkt.
No. 4-2, Kucera Decl., Ex. A, CBA § 7 at 10.[7])

SECTION 7. GRIEVANCE AND DISCIPLINARY PROCEDURES

7.01 Should any difference arise concerning the provisions of this
Agreement which cannot satisfactorily be adjusted be adjusted by the
Business Representative of the Union and the Employer, the written dispute
shall be submitted in writing within ten (10) working days of any deadlock,
to an adjustment board composed of not more than two (2) representatives of
the Union and not more than two (2) representatives of the Employer.  A
majority decision of the adjustment board shall be final and binding on all
parties.

7.02 Time for Presenting Grievances: All claims or grievances of any kind . .
. must be presented to the other party within thirty (30) working days of first
knowledge of the facts concerning such grievance or said claim will be
deemed waived.

7.03 The adjustment board shall meet within ten (10) working days of the
written submission in accordance with Section 7.01 above.  In the event of
the failure of the adjustment board to reach an agreement within fifteen (15)
working days after appointment, it shall lose jurisdiction and the matter may

---

[7] Neither party has sought judicial notice of the CBA.  However, because the FAC quotes the provisions
of section 7.01 and 7.02, the Court considers the CBA that was filed with the first motion to dismiss
under the incorporation by reference doctrine. (*See* Dkt. No. 4-2, Kucera Decl.)

be referred to an impartial arbitrator to be mutually selected by the Union and the Employer.  In the event the Employer and the Union are unable to agree upon the selection of the arbitrator within ten (10) working days, the Federal Mediation and Conciliation Service shall be petitioned to submit a panel of five (5) arbitrators. Each of the parties shall delete the names of two (2) of the panel members and the remaining arbitrator shall decide the issue.

(Dkt. No. 4-2, Kucera Decl., Ex. A, CBA § 7 at 10-11.)

Here, the FAC alleges exhaustion of administrative remedies.  (Dkt. No. 13, FAC ¶¶ 14-24.)  However, the FAC selectively quotes from the emails between Mr. Kucera and Mr. Zhuk to support exhaustion of contractual grievance remedies.  In determining whether Europa has sufficiently alleged exhaustion, the Court also considers the emails dated May 31, 2022 to June 7, 2022 between Mr. Kucera and Mr. Zhuk under the incorporation by reference doctrine.

On May 31, 2022, Mr. Zhuk, of Europa, sent an email to Mr. Kucera, the Union representative, initiating a grievance pursuant to Section 7 of the CBA.  (Dkt. No.  18-5, Kucera Decl., Ex. A at 7-8.)  The email explained, "[w]ithin the last 30 days and continuing, the Union has called for a work slowdown amounting to a work stoppage in direct violation of the Collective Bargaining Agreement."  (*Id.* at 8.)  "As a result, the Employer has been damaged in an amount to be proven at the arbitration of this matter to exceed One Hundred Thousand Dollars ($100,000).  Please contact me at your earliest convenience to set up an Adjustment Board.  If you would like to waive the Adjustment Board and proceed directly to arbitration, please advise."  (*Id.*)

On June 1, 2022, Mr. Kucera responded that because the Union sent a notice of intent to terminate dated February 1, 2022, there was no longer a contract, and therefore, no grievance or arbitration provision and no-strike/no-lockout provision in effect.  (*Id.* at 7.)  He further denied that the Union ever called for an alleged work slowdown or work stoppage.  (*Id.*)  In conclusion, he wrote, "In closing, I believe you will conclude there is no reason to proceed."  (*Id.*)  On the same day, Mr. Zhuk responded that normally there would be no grievance procedure if a contract expired; however, based on his careful

14

reading of the contract, there was language that allowed for a grievance concerning a cessation of work during bargaining after the termination of the contract.  (*Id.*)  He again concluded with, "Please let me know if you would like to have an adjustment board and when or waive such process and proceed directly to arbitration."  (*Id.*)

On June 2, 2022, Mr. Kucera replied that he disagreed with Mr. Zhuk's interpretation because the Union had issued a notice of intent to terminate on February 1, 2022.  (*Id.* at 6.)  Nonetheless, he wrote, "we are willing to bargain over this issue.  In order to do so, please provide authority that you think supports your position that the agreement's arbitration clause survived the termination of the agreement."  (*Id.*)   On June 7, 2022, Mr. Roman provided legal authority to support his position and concluded with "Please let us know if you plan to go through the grievance process (adjustment board, etc.), or we will be forced to take the lack of an affirmative response as a refusal and seek to compel the Union to arbitrate the grievance."  (*Id.* at 6.)  No more communications are alleged between Mr. Kucera and Mr. Zhuk.

First, the email communications, themselves, appear incomplete and do not demonstrate an absolute repudiation of the grievance procedures.  In his last email, Mr. Kucera wrote, "we are willing to bargain over this issue" despite the Union's position.  (*Id.*)  Europa's final email asserted that if the Union failed to respond, it would seek to compel the Union to arbitrate the grievance.  (*Id.*)  As presented, Plaintiff has failed to allege complete exhaustion of contractual grievance procedures.

Second, Europa admittedly agrees that it did not exhaust contractual grievance procedures blaming the Union's failure to convene an adjustment board.  However, to the extent Europa blames the Union for failing to convene an adjustment board, it fails to provide any legal authority on whether exhaustion of contractual remedies may be excused for refusal to convene an adjustment board.  *See e.g., Cal. Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers, Local 70*, 679 F.2d 1275, 1283-84 (9th Cir. 1981) (whether repudiation of arbitration based on conduct occurring before court estops repudiator from relying on the arbitration provisions as a defense to employers'

damages action).  Accordingly, the Court GRANTS Defendant's motion to dismiss the Section 301 claim for failing to allege exhaustion of contractual grievance procedures provided in the CBA.[8]

In sum, on the first cause of action, the Court DENIES Defendant's motion to dismiss for subject matter jurisdiction and GRANTS Defendant's motion to dismiss the Section 301 claim for failure to state a claim for failing to allege exhaustion of contractual grievance procedures provided in the CBA.

**D.     Second Cause of Action - Section 303 of the LMRA**

The FAC claims a violation of Section 303 of the LMRA commencing in May 2022.  (Dkt. No. 13, FAC ¶¶ 44-45.)  It alleges that Europa conducts business with neutral employers who are engaged in interstate commerce and do not perform work Europa conducts, and are not concerned in any disputes between the parties or between themselves and the Union.  (*Id.* ¶ 43.)  In May 2022, the Union encouraged and induced neutral employees of neutral employers to strike and/or refuse to transport, handle and work on goods and perform services.  (*Id.* ¶ 44.)  The object of the Union's conduct was to force the neutral employers to cease doing business with Europa.  (*Id.*)  It also threatened, coerced, and restrained neutral employers with the object of forcing the neutral employers to cease doing business with Europa.  (*Id.* ¶ 46.)

The Union engaged in a secondary boycott – encouraging and inducing neutral employees, and threatening, coercing and restraining neutral employers - through unlawful means of blocking ingress and egress to Europa's property, shouting threats, and assault and battery.  (*Id.* ¶ 46.)  For instance, Interstate Batteries is a neutral employer that delivers automotive batteries to Europa.  (*Id.* ¶ 43.)  Agents of the Union physically

---

[8] Because the Court grants the motion to dismiss for failure to exhaust the grievance procedures, the Court need not address Defendant's additional and alternative argument that even if Europa alleged exhaustion, it does not present a cognizable claim because the issue is subject to arbitration and Europa inappropriately seeks to have this Court adjudicate the merits of its contractual dispute.  (Dkt. No. 18-1 at 16-17.)

blocked an Interstate Batteries delivery vehicle from existing Europa's property and threatened to climb onto the vehicle and cause damage to it.  (*Id.* ¶ 47.)  The Union's object was to force the neutral employers to intercede in the dispute and cease doing business with Europa constituting an unlawful secondary boycott.  (*Id.*)

Section 303 of the LMRA provides:

(a) It shall be unlawful . . . for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.
(b) Whoever shall be injured in his business or property by reason o[f] any violation of subsection (a) may sue therefor in any district court of the United States . . . or in any other court having jurisdiction of the parties.

29 U.S.C. § 187.  Relatedly, section 158(b)(4), or section 8(b)(4) of the National Labor Relations Act ("NLRA") prohibits a labor organization from engaging in secondary boycotts.  29 U.S.C. § 158(b)(4)(ii)(B). Secondary boycott activities are those "which are calculated to involve neutral employers and employees in the union's dispute with the primary employer."  *Iron Workers Dist. Council of the Pac. Nw. v. N.L.R.B.*, 913 F.2d 1470, 1475 (9th Cir. 1990).  "A § 8(b)(4)(ii)(B) violation has two elements."  *Overstreet v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, 409 F.3d 1199, 1212 (9th Cir. 2005).  "First, a labor organization must 'threaten, coerce, or restrain' a person engaged in commerce (such as a customer walking into one of the secondary businesses)."  *Id.* (quoting 29 U.S.C. § 158(b)(4)(ii)).  "Second, the labor organization must do so with 'an object' of 'forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person.'"  *Id.* (quoting 29 U.S.C. § 158(b)(4)(ii)(B)).

Defendant argues that Plaintiff fails to allege a Section 303 violation for three reasons: (1) Europa does not plead an injury; (2) the alleged conduct targets Europa, the primary employer, and not the secondary employer; and (3) the Union's conduct was not coercive.  (Dkt. No. 18-1 at 17-19.)

First, the Union contends that the FAC fails to assert an injury under Section 303. (Dkt. No. 18-1 at 17.)  Europa does not meaningfully oppose and seeks leave to file a second amended complaint to allege an injury.  (Dkt. No. 22 at 17.)

Section 303 of the LMRA confers standing to "[w]hoever shall be injured in his business or property by reason o[f]" an unfair labor practice under NLRA § 8(b)(4).  *See* 29 U.S.C. § 187(b).  "[A] court must determine whether Section 303 standing exists by looking to: (1) the nexus between the injury and the statutory violation; and (2) the relationship between the injury alleged and the forms of injury that Congress sought to prevent or remedy by enacting the statute."  *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union,* 721 F.3d 1147, 1153 (9th Cir. 2013) (citing *Fulton v. Plumbers & Steamfitters*, 695 F.2d 402, 405 (9th Cir. 1982)).

According to Europa, the FAC alleges injury by claiming that Interstate Batteries was induced to intercede in the labor dispute between the parties.  (Dkt. No. 22 at 17; *see also* Dkt. No. 13, FAC ¶¶ 43-47.)  There are no allegations that inducing Interstate Batteries to intercede produced any injury or damage.  This allegation is not sufficient to allege an injury to support standing.  *See* 29 U.S.C. § 187(b).  Therefore, the Court grants dismissal the Section 303 LMRA cause of action for failing to plead injury.  However, because the Court grants Plaintiff leave to file a second amended complaint to allege injury, it also considers the other arguments raised by the Union.

Defendant next argues that the Union's alleged conduct targets Europa, the primary employer, seeking to halt the day-to-day operations of the struck employer and halt all those approaching the situs whose mission is selling the struck product.  (Dkt. No. 18-1 at 18.)  Europa responds that the FAC alleges unlawful secondary conduct because the Union targeted Interstate Batteries, a neutral employer, to force it to cease doing business with Europa.  (Dkt. No. 22 at 16.)

Section 8(b)(4) was intended to meet "the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others

from pressures in controversies not their own." *N.L.R.B. v. Denver Bldg. Council,* 341 U.S. 675, 692 (1951).  Section 8(b)(4) "proscribes secondary activity, but by its express proviso allows for primary activity even though such activity may indirectly affect a secondary employer. Thus, the crucial question in this type of case is always to determine the object of the labor activity." *N.L.R.B. v. N. Cal. Dist. Cnty. of Hod Carriers & Common Laborers of Am., AFL-CIO*, 389 F.2d 721, 725 (9th Cir. 1968).  "If it is primary, in other words directed only at the employer with whom the union has a bona fide labor dispute, then it may be lawful even though some neutral or secondary employers might be affected.  Conversely, if its object is to bring indirect pressure on the primary employer by involving neutral or secondary employers and their employees, then it may be unlawful." *Id.*  The United States Supreme Court recognized that protected primary picketing "has characteristically been aimed at all those approaching the situs whose mission is selling, delivering or otherwise contributing to the operations which the strike is endeavoring to halt . . . including other employers and their employees." *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co*., 394 U.S. 369, 388 (1969).  The Court distinguished unlawful secondary boycott as "sanctions [that] bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it.  Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands.'" *Id.*

Here, the FAC sufficiently alleges a secondary boycott as to the Union's conduct towards the Interstate Batteries delivery vehicle.  (Dkt. No. 13, FAC ¶ 47.)  It alleges that the Union agents blocked the vehicle, threatened to climb onto the vehicle and cause it damage.  (*Id.*)  The Union's object was to force Interstate Batteries, the neutral employer, to intercede in the dispute between Europa and the Union and to cease doing business with Europa.  (*Id.*)  Taking these allegations as true, the Court concludes that Europa has sufficiently alleged conduct targeting a neutral employer.

Finally, Defendant maintains that the Union's conduct was not coercive because it was a protected primary strike.  (Dkt. No. 18-1 at 18-19.)  Europa argues that the FAC

alleges conduct that exceeds peaceful strike activity and includes violence or threats of violence.  (Dkt. No. 22 at 17.)

NLRA § 8(b)(4)(ii)(B) requires that the union "threaten, coerce, or restrain" any person to cease doing business with another.  29 U.S.C. § 158(b)(4)(ii).  The Supreme Court has emphasized that, in light of a union's First Amendment rights, the phrase "'threaten, coerce, or restrain' . . . should be interpreted with 'caution' and not given a 'broad sweep.'"  *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 578 (1988).

In this case, the FAC alleges that the Union blocked an Interstate Batteries delivery vehicle from exiting Europa's property and threatened to have its agent climb onto the vehicle and cause damage to it.  (Dkt. No. 13, FAC ¶ 47.)  The core object was to direct union pressure at neutral employees to refuse to work with and inducing and coercing their neutral employers to cease doing business with Europa and direct union pressure at neutral employers.  (*Id.*)

The FAC alleges conduct beyond lawful peaceful picketing against Europa; therefore, taking the allegations of the FAC as true, the Court concludes that Plaintiff has sufficiently alleged the union threatened or coerced the Interstate Batteries delivery person to cease doing business Europa in violation of 29 U.S.C. § 158(b)(4)(ii).  *See Overstreet,* 409 F.3d at 1213-14 (a union protest at a neutral employer's premises that creates a physical or symbolic barrier to the neutral employer or promotes physical confrontations with individuals seeking to enter the neutral employer's business was unlawful).

In sum, because Europa failed to allege injury, the Court GRANTS Defendant's motion to dismiss the second cause of action alleging violations of Section 303 of the LMRA.

/ / /

/ / /

/ / /

**E.      State Law Claims**

Defendant seeks dismissal of the FAC in its entirety with prejudice but provides no legal basis for the dismissal of the state law claims.  (Dkt. No. 18-1 at 19.)  Nonetheless, the Court considers the remaining state law claims.

The third through seventh causes of action allege state law claims for 1) tortious interference with prospective economic advantage and contractual business relations, 2) trespass to chattel, 3) trespass to real property, 4) defamation, and 5) unfair competition pursuant to California Business & Professions Code section 17200 *et seq*.  (Dkt. No. 13, FAC ¶¶ 48-71.)

A district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -- . . . (3) the district court has dismissed all claims over which it has original jurisdiction. . . ."  28 U.S.C. § 1367(c)(3).

Here, because the Court grants dismissal of the federal causes of action, there is no basis for the Court's jurisdiction; therefore, it *sua sponte* GRANTS dismissal of state law claims.  *See Acri v. Varian Assocs., Inc*., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (*en banc*) (district courts may decline *sua sponte* to exercise supplemental jurisdiction).

**F.      Leave to Amend**

In the event the Court grants dismissal of any claim under Rule 12(b)(6), Plaintiff seeks leave of Court to file a second amended complaint to cure the deficiencies.  (Dkt. No. 22 at 17-18.)  Therefore, because amendment would not be futile, the Court GRANTS Plaintiff leave to file a second amended complaint.  *See DeSoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Conclusion

Based on the reasoning above, the Court DENIES Defendant's motion to dismiss the LMRA Section 301 claim for lack of subject matter jurisdiction under Rule 12(b)(1), GRANTS Defendant's motion to dismiss the LMRA Sections 301 and 303 claims for failing to state a claim under Rule 12(b)(6).  Plaintiff is granted one final opportunity to file a second amended complaint on or before **November 16, 2023**.  Finally, the Court DENIES Defendant's accompanying motion to dismiss the state law claims under the anti-SLAPP statute as MOOT.  (Dkt. No. 19.)

IT IS SO ORDERED.

Dated:  November 2, 2023

Hon. Gonzalo P. Curiel
United States District Judge

22cv1987-GPC(BGS)