1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  EUROPA AUTO IMPORTS, INC. d/b/a MERCEDES-BENZ OF SAN DIEGO,<br>12<br>13            Plaintiff,<br>14  v.<br>15  INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSAPCE WORKERS LOCAL LODGE NO. 1484, MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE 190 and DOES 1 through 50, inclusive,<br>18<br>19            Defendants. | Case No.: 22cv1987-GPC(BGS)<br><br>**ORDER:**<br>**(1) DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION;**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM; AND**<br><br>**(3) DENYING DEFENDANT'S ANTI-SLAPP MOTION TO STRIKE STATE LAW CLAIMS**<br><br>**[Dkt. Nos. 28, 29.]** |

26         Before the Court is Defendant's motion to dismiss the second amended complaint

27  pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) as well as

28  Defendant's anti-SLAPP motion to strike the state law claims.  (Dkt. Nos. 28, 29.)

Plaintiff filed responses on December 22, 2023.  (Dkt. Nos. 31, 32.)  Replies were filed by Defendant on January 5, 2024.  (Dkt. Nos. 33, 34.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court DENIES Defendant's motion to dismiss for lack of subject matter jurisdiction and GRANTS in part and DENIES in part Defendant's motion to dismiss for failure to state a claim.[1]  The Court also DENIES Defendant's anti-SLAPP motion to strike the state law claims.

## Background

On December 15, 2022, Plaintiff Europa Auto Imports, Inc. d/b/a Mercedes-Benz of San Diego ("Plaintiff" or "Europa") filed a complaint against Defendant International Association of Machinists and Aerospace Workers Local Lodge No. 1484, Machinists Automotive Trades District Lodge 190 ("Defendant" or "Union") for breach of the collective bargaining agreement and related claims.  (Dkt. No. 1, Compl.)  On July 20, 2023, the Court granted in part and denied in part Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and granted Defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim with leave to amend.  (Dkt. No. 12.)  On August 3, 2023, Plaintiff filed a first amended complaint.  (Dkt. No. 13.)  On November 2, 2023, the Court denied Defendant's motion to dismiss the first amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and granted Defendant's motion to dismiss under Rule 12(b)(6) for failing to state a claim with leave to amend.  (Dkt. No. 26.)

On November 16, 2023, Plaintiff filed a second amended complaint ("SAC") alleging 1) breach of the collective bargaining agreement pursuant to Section 301 of the

---

[1] Defendant filed a request for judicial notice of the December 29, 2022 and January 9, 2023 notices from the National Labor Relations Board ("NLRB") Office of Appeals concerning Europa's appeal of Regions 21's dismissal of its unfair labor practice charge, case number 21-CA-298378.  (Dkt. No. 28-2; Dkt. No. 28-3, Fujimoto Decl.)  Because the Court did not rely on these documents in its ruling, the Court DENIES Defendant's request for judicial notice as moot.

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; 2) unfair labor practice causing injury to business or property pursuant to Section 303 of the LMRA, 29 U.S.C. § 187; 3) tortious interference with prospective economic advantage and contractual business relations; 4) trespass to chattel; 5) trespass to real property; 6) defamation; and 7) unfair competition under California Business & Professions Code section 17200 *et seq.* (Dkt. No. 27, SAC.)

According to the SAC, Europa and the Union entered into a written collective bargaining agreement ("CBA") effective May 1, 2019 until April 30, 2022. (*Id.* ¶ 13.) Prior to April 30, 2022 and continuing through July 2022, both parties held bargaining sessions to amend the CBA to agree on terms for a new contract. (*Id.* ¶ 37.) The no strike provision of section 32 of the CBA prohibits the Union from engaging in any "strike, picketing, sympathy strike, work stoppage, slowdown of work or walk out" during the term of the CBA. (*Id.* ¶ 36.) Plaintiff alleges that the Union breached the CBA when, beginning in April 2022, "the Union planned, organized, caused and directed an illegal work slowdown and work stoppages and/or false sickouts among the bargaining unit employees . . . ." (*Id.* ¶ 38.)

On May 31, 2022, Plaintiff claims it submitted a timely grievance with the Union and/or made a demand for arbitration but Defendant has failed to comply even though the breach occurred prior to the expiration of the CBA. (*Id.* ¶ 39.) Europa further alleges that the work slowdown was done for economic purposes and not for any unfair labor practice. (*Id.* ¶ 41.) Due to the Union's breach of the CBA, Europa, engaged in retail sales and service of high-end consumer and commercial vehicles, has been prevented from timely sales and service of vehicles and has incurred and will incur substantial costs and expenses due to the illegal work slowdown and stoppage. (*Id.* ¶ 42.) As a result of the Union's conduct, Plaintiff has secured permanent, temporary, stopgap and conditional labor to maintain its operations during the strike resulting in additional damages. (*Id.* ¶ 44.)

1   Plaintiff also alleges that during picketing, an agent of the Union was holding a
2   picket sign and repeatedly hit a customer's car striking the hood and windshield driven by
3   an employee that was entering the employer's property causing significant damage to the
4   customer's hood and windshield.  (*Id.* ¶¶ 11, 63.)  Agents of the Union also blocked
5   egress and ingress of Europa's property using intimidation, harassment, and violence,
6   including assault and battery, to interrupt Plaintiff's business operations.  (*Id.* ¶¶ 11, 66.)
7   Further, Pedro Gomez, an agent of defendant, knowingly published false facts that
8   Europa did not have any qualified technicians performing services and repairs during the
9   strike and that an unqualified technician blew up an engine on a customer's car.  (*Id.* ¶
10  69.)

**Discussion**

11  **A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(1)**

12      Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a
13  complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1)
14  jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242
15  (9th Cir. 2000).  Defendant raises a factual and facial challenge to subject matter
16  jurisdiction.  (Dkt. No. 28.)

17      "In a facial attack, the challenger asserts that the allegations contained in a
18  complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for*
19  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In such an attack, the factual
20  allegations in the complaint are accepted as true and all reasonable inferences are viewed
21  in the plaintiff's favor.  *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014).

22      "By contrast, in a factual attack, the challenger disputes the truth of the allegations
23  that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*,
24  373 F.3d at 1039.  In a factual attack, the challenger provides evidence that an alleged
25  fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction.  *Id.*
26  Under a factual attack, the allegations in the complaint are not presumed to be true,
27  *White*, 227 F.3d at 1242, and "the district court is not restricted to the face of the

4

pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). While the district court may resolve factual disputes regarding jurisdiction, "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)). "The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.*

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union H.S., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

**B.     Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**C.    First Cause of Action –Section 301(a) of the LMRA**

**1.    Rule 12(b)(1) – Subject Matter Jurisdiction**

The SAC asserts federal subject matter jurisdiction relying on Section 301 of the LMRA alleging breach of the no-strike provision of the CBA when the Union directed a work slowdown, work stoppage and/or false sickouts in mid-April 2022, prior to the expiration of the CBA. (Dkt. No. 27, SAC ¶¶ 2, 36, 38.)

Section 301(a)[2] of the LMRA confers the Court with subject matter jurisdiction over "[s]uits for violation of contracts." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l. Union*, 523 U.S. 653, 656 (1998). "Section 301(a) is a basis for jurisdiction when the suit is based on a colorable claim of breach of contract between an employer and a labor organization in an industry affecting commerce and the resolution of the lawsuit is focused upon and governed by the terms of the contract." *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay Cntys., Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983).

However, "[a]n expired CBA itself is no longer a 'legally enforceable document.'" *Off. & Pro. Employees Ins. Trust Fund v. Laborers Funds Admin. Off. of N. Cal., Inc.*, 783 F.2d 919, 922 (9th Cir. 1986) (quoting *Cement Masons Health and Welfare Trust Fund For N, Cal. v. Kirkwood-Bly, Inc.*, 520 F. Supp. 942, 944-45 (N.D. Cal. 1981), *aff'd*, 692 F.2d 641, (9th Cir. 1982)); *Lumber Prod. Indus. Workers Loc. No. 1054 v. W. Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 10476 (9th Cir. 1985) ("It logically follows that an expired [collective bargaining] agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a)"); *Cement Masons Health and Welfare Trust Fund v. Kirkwood–Bly, Inc.*, 520 F. Supp. 942, 946 (N.D. Cal. 1981) ("Plaintiffs cite no case, nor can we find any, which ha[s] permitted district courts to enforce properly expired collective bargaining agreements in a section 301 action"), *aff'd*, 692 F.2d 641 (9th Cir. 1982). As a general rule, where the bargaining contract at issue has expired, the parties are "released . . . from their respective contractual obligations"

---

[2] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

and any dispute between them cannot be said to arise under the contract. *Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 206 (1991).

Here, the parties entered into a CBA effective May 1, 2019 through April 30, 2022. (Dkt. No. 27, SAC ¶ 13; Dkt. No. 4-2, Kucera Decl., Ex. A, CBA § 33.01.)  Section 32 of the CBA provided that "[d]uring the term of this Agreement, the union agrees that it will not authorize, cause, induce, support or condone any strike, picketing, sympathy strike, work stoppage, slowdown of work or walk out by any employee covered by this Agreement . . . ." (*Id.* § 32.01.)

Despite the Court's prior two orders denying the Union's subject matter jurisdiction challenge, it raises the argument a third time relying on NLRB documents it had filed in its first motion to dismiss.[3]

The Court previously held that the claim alleging breach of the CBA based on the work slowdown alleged in April 2022, prior to the expiration of the CBA, survived and denied dismissal of the Section 301 on the factual challenge[4] to subject matter jurisdiction. (Dkt. No. 12 at 11.)  But the Court granted dismissal of any challenged conduct that occurred after April 30, 2022, when the CBA had expired, for lack of subject matter jurisdiction. (*Id.* at 9.)  In a subsequent order, the Court again denied dismissal of the Section 301 claim based on subject matter jurisdiction relying on the Court's prior ruling and rejecting the Union's attempt to raise disputed facts as to when the slowdown began by presenting additional evidence. (Dkt. No. 26 at 7-8.)  The Court specifically noted that to the extent the Union's evidence raised a disputed issue of fact on jurisdiction, it could not resolve it at the motion to dismiss stage. (*Id.* at 8 n. 5.)

This time, the Union admittedly[5] raises another disputed issue of fact relying on the NLRB's rulings summarizing Europa's claims that a slowdown began in May 2022 after

---

[3] It is not clear why this argument was not raised in its initial motion to dismiss.

[4] In its order, the Court relied on the allegations in the complaint and the declarations of two Union employees and the General Manager of Europa. (Dkt. No. 12 at 11.)

[5] The Union asks the Court to resolve the factual dispute on jurisdiction. (Dkt. No. 34 at 4.)

the expiration of the CBA, which is in conflict with the allegations in the SAC.  (*See* Dkt. No. 34 at 3-4.)  To the extent that the Court is able to consider the NLRB's rulings as evidence, which Europa challenges, this evidence merely presents further disputed issues of fact as to subject matter jurisdiction.  Because Section 301 provides the basis for the Court's jurisdiction as well as the substantive claim on the merits, it may not resolve the issue at the motion to dismiss stage.  *See Safe Air for Everyone*, 373 F.3d at 1039 ("[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action.").

Accordingly, for the same reasons articulated in its prior two orders, the Court DENIES Defendant's motion to dismiss the Section 301 claim for lack of subject matter jurisdiction.

## 2.      Rule 12(b)(6) - Failure to Exhaust Contractual Grievances

The Union also maintains that the first cause of action for breach of the CBA fails for insufficiently alleging exhaustion of contractual grievance procedures in the CBA. (Dkt. No. 28-1 at 15-16.)  Plaintiff responds it exhausted the grievance procedures but the Union refused to comply.  (Dkt. No. 31 at 5-6.)

### a.      Legal Framework

The Ninth Circuit has recognized that failure to exhaust is an affirmative defense that must be properly pled and proven at the summary judgment stage.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).  However, if a failure to exhaust is "clear on the face of the complaint", a defendant may move to dismiss under Rule 12(b)(6).[6]  *Id.*

---

[6] As the court noted in its prior order, although *Albino* addressed a Prison Litigation Reform Act ("PLRA") case, the court made clear that these procedures are appropriate in all contexts where exhaustion applies and explicitly included LMRA claims.  *Id.* at 1171 (overruling *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1078 n. 2 (9th Cir. 2002) (exhaustion of non judicial remedies under the Labor Management Relations Act ("LMRA") and *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam) (LMRA)).

Further, the burden to prove exhaustion falls on the defendant.  *Id.* ("Failure to exhaust . . . is an affirmative defense the defendant must plead and prove") (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)) (internal citations omitted)).  However, the burden of demonstrating that exhaustion would be futile falls on the plaintiff.  *Id.* at 1172 ("the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile") (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

Because the Union raises a Rule 12(b)(6) challenge to Europa's failure to exhaust, the Court looks at whether the failure to exhaust is apparent on the face of the FAC.  *See Albino*, 747 F.3d at 1166.

### b.    Extrinsic Evidence on Rule 12(b)(6)

To support its failure to exhaust defense, the Union relies on email communications between Kevin Kucera ("Mr. Kucera"), the Business Representative of Defendant, and Roman Zhuk ("Mr. Zhuk"), Senior Vice President of Human Resources and Legal Counsel for Plaintiff, dated May 24, 2022 through June 7, 2022, (Dkt. No. 18-5, Kucera Decl., Ex. A), and emails between Jesse Juarez ("Mr. Juarez"), Area Director of Organizing, and Mr. Zhuk from June 13, 2022 through June 24, 2022, (Dkt. No. 18-4, Juarez Decl., Ex. A, Dkt. No. 18-5, Kucera Decl., Ex. B).

The Court previously considered the emails dated May 24, 2022 through June 7, 2022 between Mr. Kucera and Mr. Zhuk under the incorporation by reference doctrine articulated in *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018).  (Dkt. No. 26 at 12.)  Because the SAC also specifically relies on and quotes from the emails between Mr. Juarez and Mr. Zhuk from June 13, 2022 through June 24, 2022, (Dkt. No. 27, SAC ¶¶ 18-25), and no party disputes the authenticity of the email exchanges, the Court considers the email exchanges between Mr. Kucera and Mr. Zhuk under the incorporation by reference doctrine without converting the motion to dismiss into a motion for summary judgment.

/ / /

### c.   Exhaustion of Mandatory Contractual Grievance Procedure

"As a general rule in cases to which federal law applies, federal labor policy requires . . . use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).  In passing Section 301, Congress' intent was to encourage mutually agreed upon grievance procedures between the parties in a collective bargaining agreement to "promote a higher degree of responsibility upon the parties to such agreements . . .  thereby promot[ing] industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL–CIO*, 370 U.S. 254, 263 (1962) (quoting S. Rep. No. 105, 80th Cong., 1st Sess. 17).

Section 301 of the LMRA requires "the specific performance of promises to arbitrate grievances in collective bargaining agreements." *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union,* 23 F.4th 836, 842 (9th Cir. 2022) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).  Permitting the district court to proceed before the grievance process has been exhausted would "eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Id.* at 845 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

Therefore, mandatory grievance and arbitration procedures contained in a collective bargaining agreement must be exhausted before bringing a lawsuit under Section 301 of the LMRA.  *See Republic Steel Corp.*, 379 U.S. at 652; *see Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990) ("As a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement.").

In the instant case, both parties agree that the allegation of the alleged work slowdown that occurred in April 2022, prior to the expiration of the CBA, must have been exhausted prior to filing the compliant in this Court as Section 7 of the CBA covers

"any difference[s that] arise concerning the provisions of this Agreement." (Dkt. No. 4-2, Kucera Decl., Ex. A, CBA § 7 at 10.)

Here, the allegations in the SAC and the email communications, incorporated by reference, demonstrate attempts to exhaust administrative remedies, (Dkt. No. 27, SAC ¶¶ 14-27), but only as to conduct after the expiration of the CBA, (*id*. ¶¶ 19-24).[7]  None of the allegations as to exhaustion address or reference a work slowdown in April 2022. Instead, they ostensibly show that the parties were disputing whether the Union's alleged work slowdown was covered by the grievance procedure despite the expiration of the CBA.  (*See* Dkt. No. 27, SAC ¶¶ 20-23; Dkt. No. 18-5, Kucera Decl., Exs. A & B).  This is made clear in an email where Plaintiff's counsel provided legal authority to support his position that the grievance procedure would survive expiration of the CBA.  (Dkt. No. 27, SAC ¶ 23.)  There is no reference to conduct that preceded the expiration of the CBA. Thus, the Court concludes that the allegations in the SAC and the emails, incorporated by reference, do not allege exhaustion of the grievance procedures concerning alleged work slowdown in April 2022, prior to the expiration of the CBA.  Therefore, the Court GRANTS Defendant's motion to dismiss the Section 301 claim for failure to allege exhaustion of contractual grievance procedures provided in the CBA.[8]  Because Plaintiff was provided with three opportunities to allege exhaustion, the dismissal is with prejudice.

**D.     Second Cause of Action - Section 303 of the LMRA**

The Union next argues that Europa fails to allege Section 303 standing because 1) Plaintiff has not shown that the Union's alleged unlawful conduct, rather than the primary

---

[7] The Court had previously noted that "the complaint fails to allege whether the April 2022 slowdown was subject to the grievance submitted by Plaintiff on May 24 and May 31, 2022 and fails to allege that it complied with the grievance procedure as provided in the CBA." (Dkt. No. 12 at 13.)  Europa has not sufficiently amended its complaint to address the Court's prior concerns alleging exhaustion of the April 2022 slowdown.

[8] The Court need not address Defendant's additional facial challenge to subject matter jurisdiction. (Dkt. No. 28-1 at 11-12.)

strike, materially contributed or was a substantial factor in the costs associated with hiring strikebreakers and security guards; and 2) there is no relationship between the injury alleged and the forms of injury that Congress sought to prevent or remedy.  (Dkt. No. 28-1 at 13-14.)  Plaintiff disagrees arguing costs for security guards hired to protect against violence to person and property due to the secondary boycott, and labor costs are allowable damages in a Section 303 suit.  (Dkt. No. 31 at 9.)

Section 303 of the LMRA provides:

(a) It shall be unlawful . . . for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title
(b) Whoever shall be injured in his business or property by reason o[f] any violation of subsection (a) may sue therefor in any district court of the United States . . . or in any other court having jurisdiction of the parties.

29 U.S.C. § 187.  Relatedly, section 158(b)(4), or section 8(b)(4) of the National Labor Relations Act ("NLRA"), prohibits a labor organization from engaging in secondary boycotts.  29 U.S.C. § 158(b)(4)(ii)(B).[9]  Secondary boycott activities are those "which are calculated to involve neutral employers and employees in the union's dispute with the primary employer."  *Iron Workers Dist. Council of the Pac. Nw. v. N.L.R.B.*, 913 F.2d

---

[9] Section 158(b)(4) of the NLRA provides,

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
. . . (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing . . . .

29 U.S.C. § 158(b)(4)(ii)(B).

1470, 1475 (9th Cir. 1990). "Essentially, this secondary boycott prohibition makes it unlawful for a union to bring indirect pressure on a primary employer by involving neutral or secondary employers." *John B. Cruz Constr. Co., Inc. v. United Brotherhood of Carpenters and Joiners of Amer., Local 33*, 907 F.2d 1228, 1230 (1st Cir. 1990).

Section 303 of the LMRA confers standing to "[w]hoever shall be injured in his business or property by reason o[f]" an unfair labor practice under NLRA § 8(b)(4). *See* 29 U.S.C. § 187(b). "[A] court must determine whether Section 303 standing exists by looking to: (1) the nexus between the injury and the statutory violation; and (2) the relationship between the injury alleged and the forms of injury that Congress sought to prevent or remedy by enacting the statute." *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union,* 721 F.3d 1147, 1153 (9th Cir. 2013) (citing *Fulton v. Plumbers & Steamfitters*, 695 F.2d 402, 405 (9th Cir. 1982)). A plaintiff must show not only that the Union violated section 8(b)(4)(A) and it falls within the class of persons afforded a remedy by section 303, but must also show it was "injured in (their) business or property by reason of" the violation." *Mead v. Retail Clerks Int'l. Ass'n, Local Union No. 839, AFL-CIO*, 523 F.2d 1371, 1376 (9th Cir. 1975). This requires a plaintiff to show the defendant's conduct "materially contributed" to its injury or was a "substantial factor" in bringing it about, "notwithstanding other factors contributed also." *Id.* (citations omitted). In *Mead*, the Ninth Circuit explained that this standard is particularly useful when there may be lawful and unlawful forces bringing about the injury or multiple motivations for a single course of conduct. *Id.* at 1376. Moreover, an injured party need only establish with "'reasonable probability the existence of some causal connection between the defendant's wrongful act and some loss of anticipated revenue." *Id.* at 1377 (citation omitted).[10]

---

[10] The Court relies on *Mead* as the legal standard relied upon by courts to standing under Section 303 of the LMRA instead of *Fulton*'s "necessary and integral" standard raised by the Union. Ultimately, both parties agree that *Mead* is the applicable standard.

The SAC claims a violation of Section 303 of the LMRA commencing in May 2022. (Dkt. No. 27, SAC ¶¶ 46-54.) The Union engaged in this secondary boycott through unlawful means of blocking ingress and egress to Europa's property, shouting threats, and committing assault and battery. (*Id.* ¶ 49.) For instance, Interstate Batteries is a neutral employer that delivers automotive batteries to Europa. (*Id.* ¶ 50.) Agents of the Union physically blocked an Interstate Batteries delivery vehicle from exiting Europa's property and threatened to climb onto the vehicle and cause damage to it. (*Id.* ¶ 50.) The Union's object was to force the neutral employers to intercede in the dispute and cease doing business with Europa constituting an unlawful secondary boycott. (*Id.*) This was accomplished by blocking Interstate Batteries drivers from transporting and handling goods and perform services and inducing them to refuse to work or strike to force Interstate Batteries to intercede in the dispute between Plaintiff and Defendant. (*Id.*) Plaintiff claims that this conduct occurred repeatedly with many vendors from also entering its facility. (*Id.* ¶¶ 52, 53.) As a result, Europa alleges it suffered injury and damages in the form of financial loss for the delay in receiving products from outside vendors as the jobs are priced based on the number of "labor hours" assigned to a particular service or repair. (*Id.* ¶ 51.) According to the SAC, every minute of delay of the Interstate Batteries truck, or each time it was stopped at the entrance, resulted in one minute of lost income. (*Id.* ¶ 52.) In addition, Plaintiff incurred injury and damage by having to hire guards to patrol the entrance to allow vendors to enter in a timely manner. (*Id.* ¶ 52.) During June and July 2022, Plaintiff contracted with its usual security vendor to provide an additional 4 to 5 people per day and also engaged an additional security vendor to provide one armed security guard and two unarmed guards to address the security issues caused by the unlawful secondary boycott. (*Id.* ¶ 53.) The additional security costs were "necessitated by Defendant's unlawful secondary boycott activity." (*Id.*) Further, Plaintiff claims that it incurred fringe benefit expenses associated with each hour of work spent that was caused by the delay. (*Id.* ¶ 54.)

In this case, Plaintiff alleges it was necessary to hire additional security guards and incurred labor costs as a result of the Union's unlawful secondary boycott activity to protect against violence to person and property.[11]  (Dkt. No. 27, FAC ¶¶ 53.)  "Courts generally include private security costs within the scope of allowable damages in a section 303 suit."  *Pepsi-Cola Co. v. Rhode Island Carpenters Dist. Council*, 962 F. Supp. 266, 282-83 (D.R.I. Apr. 24, 1997) (relying on *Mead*).  Moreover, in *Cranshaw Const. of New England, L.P. v. Int'l Ass'n of Bridge, Structural and Ornamental Ironworkers, AFL-CIO, Local No. 7*, 891 F. Supp. 666, 672 (D. Mass. May 19, 1995), the district court concluded that the Union's conduct of blocking entryway and staying on cranes was a secondary boycott and a violation of Section 303 and awarded damages for the hiring of off-duty police officers to patrol the site during the protest and private security to guard the site.  *Id.* at 677, 678.

Moreover, the Union's argument that Europa's alleged damages are only integral to the primary strike and not the secondary boycott is foreclosed by *Mead* as the court recognized that damages may result from lawful and unlawful conduct.  Drawing all reasonable inferences in favor of Plaintiff, the Court concludes Plaintiff has sufficiently alleged security and labor costs incurred by Europa were due to the Union's unlawful secondary boycott and the need to protect against violence to person and property based on threats made by Union representatives.  The SAC allegations sufficiently support the element that the damages from defendant's conduct "materially contributed" to its injury or was a "substantial factor" in bringing it about.  The Court concludes that Plaintiff has sufficiently alleged it has standing to bring a Section 303 claim against the Union.

---

[11] Defendant argues the Court narrowed the allegations of the Section 303 to Interstate Batteries.  (Dkt. No. 28-1 at 13.)  The Court disagrees.  It merely analyzed the allegations as to Interstate Batteries as an example provided in the first amended complaint to assess whether the Union had stated a Section 303 claim.  The SAC alleges facts surrounding the Union's alleged unlawful conduct of blocking an Interstate Batteries delivery vehicle from leaving Europa's property as an example.  (Dkt. No. 27, SAC ¶ 50.)  But the SAC also claims that this allegedly unlawful conduct occurred with many vendors, including blocking vendors from entering the facility.  (*Id.* ¶¶ 52, 53.)

The Union also summarily argues that Europa's injuries are not of the "form that Congress sought to prevent" which is to protect businesses facing an "existential threat" but without presenting relevant legal authority.  Under *Mead*, Europa is entitled to any damages caused by defendant's conduct that "materially contributed" to its injury or was a "substantial factor" in bringing it about.  At this stage of the proceedings, the Court DENIES Defendant's motion to dismiss the Section 303 cause of action.

Because the Court has subject matter jurisdiction over the SAC based on the Section 303 claim, the Court now addresses Defendant's challenges to the state law claims.[12]

## E.   Defendant's Anti-SLAPP Motion to Strike State Law Claims

Defendant has also filed a motion to strike the state law causes of action under California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute.  (Dkt. No. 29-1.)  Plaintiff filed an opposition.  (Dkt. No. 32.)

Under California's anti-SLAPP statute, a defendant can file a special motion to strike a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution."  Cal. Civ. Proc. Code § 425.16(b)(1).  "The purpose of the anti-SLAPP statute is 'to allow for early dismissal of meritless [F]irst [A]mendment cases aimed at chilling expression through costly, time-consuming litigation.'"  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (quoting *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017)).

The Court analyzes an anti-SLAPP motion under a two-step analysis.  *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).  First, the defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in

---

[12] In the prior orders, the Court dismissed the state law claims because the Court did not have subject matter jurisdiction and denied Defendant's anti-SLAPP motion to strike as moot.  (*See* Dkt. No. 12 at 14, 16; Dkt. No. 26 at 21-22.)

22cv1987-GPC(BGS)

connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Id.* (citation omitted).  Second, "if the defendant has made such showing, we evaluate whether the plaintiff has 'establish[ed] a reasonable probability that the plaintiff will prevail on his or her . . . claim.'" *Id.* (citation omitted).

"The degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure has been hotly disputed." *Planned Parenthood Federation of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  To avoid collision between state procedure and federal procedure, *see Metabolife Int'l., Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56"), courts must "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood*, 890 F.3d at 833.  Motions that challenge the legal sufficiency of the complaint are analyzed under Rules 8 and 12 and motions that challenge the factual sufficiency of the complaint are analyzed under Rule 56.  *Herring Networks, Inc.*, 8 F.4th at 1156; *see Planned Parenthood*, 890 F.3d at 833.  In the later scenario, "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Planned Parenthood*, 890 F.3d at 834.

The third through seventh causes of action allege state law claims for 1) tortious interference with prospective economic advantage and contractual business relations, 2) trespass to chattel, 3) trespass to real property, 4) defamation, and 5) unfair competition pursuant to California Business & Professions Code section 17200 *et seq*.  (Dkt. No. 27, SAC ¶¶ 55-78.)

### 1.   Claims Arising from Protected Activity

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn v. Drage*, 65 F.4th 1109, 1120–21 (9th Cir. 2023) (citations omitted).  On this prong, the defendant must

22cv1987-GPC(BGS)

make out a *prima facie* case showing that "activity underlying a plaintiff's claim is statutorily protected." *Id.* at 1121 (quoting *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 888 (2019)). At this stage, the defendant must first "identify what acts each challenged claim rests on," and then "show how those acts are protected under a statutorily defined category of protected activity." *Id.* (quoting *Bonni v. St. Joseph Health System*, 11 Cal. 5th 995, 1009 (2021)). "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step [of the anti-SLAPP analysis] is reached." *Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

Here, Defendant challenges all state law claims asserting that the conduct underlying each claim rests on the Union's "alleged speech and conduct in furtherance of [the] protected activity" of picketing. (Dkt. No. 29-1 at 10-12.) Specifically, it argues that each claim challenges how the Union members were striking and how they conveyed their message. (*Id.* at 12.) The Union admittedly concedes that the "storming" of the dealership in the non-customer areas and the alleged windshield incident are arguably mixed protected and unprotected conduct as they include allegations of property damage, and trespass onto private property. (*Id.*) However, because the thrust of the conduct is protected, Defendant claims the first prong has been satisfied. (*Id.*) In response, Plaintiff does not dispute that picketing is a protected activity and does not address Defendant's argument that the causes of action arise from those protected activities.[13] (*See* Dkt. No. 32.) Therefore, the Court concludes that the Union has met its prima facie burden on the first prong that the SAC alleges picketing activity protected by section 425.16 and that

---

[13] Europa argues that the Union's work slowdown, unlawful intimidation and blocking of egress and ingress are not protected under the NLRB as it concerns the Fifth Cause of Action for Trespass to Property. (Dkt. No. 32 at 19-20.) However, the Fifth Cause of Action concerns allegations that Defendant and its agents unlawfully repeatedly entered into non-public areas of Plaintiff's facility during working time to interrupt business and intimidate workers who were not striking. (Dkt. No. 27, SAC ¶ 66.)

the causes of action arise from the protected act of picketing.  *See Int'l Union of Operating Engineers, Local 39 v. Macy's, Inc.,* 83 Cal. App. 5th 985, 991 (2022) ("the trial court correctly determined that the complaint arises from protected activity because its allegations concern picketing").

### 2.    Reasonable Probability of Prevailing on the Merit

At the second step of the anti-SLAPP inquiry, the burden shifts to the plaintiff to "show a 'reasonable probability' of prevailing in its claims for those claims to survive dismissal." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).  Because the instant motion to strike raises a challenge to the legal sufficiency of the claims in the SAC, (Dkt. No. 33 at 2), the Court will apply the Rule 12(b)(6) standard and consider whether the claims have been properly plead.  *Planned Parenthood*, 890 F.3d at 834; *In re Bah*, 321 B.R. 41, 45 n.6 (B.A.P. 9th Cir. 2005) ("In other words, the court must read the complaint broadly, take all well-pleaded allegations as true, and dismiss with leave to amend."); *Eliott v. Lions Gate Ent'mt  Corp.*, 639 F. Supp. 3d 1012 1023 (C.D. Nov. 8, 2022) (applying Rule 12(b)(6) standard on second prong of anti-SLAPP analysis).

### a.    Union Liability under Norris-LaGuardia Act

As an initial matter, the Court considers Defendant's argument that as to the trespass to chattel, trespass to real property, and defamation claims, Europa has failed to sufficiently allege an agency relationship between the Union and bargaining unit members to support liability against the Union.  (Dkt. No. 29-1 at 16-17.)  Europa responds that the Union misstates the pleading standard under the Norris-LaGuardia Act which addresses an evidentiary burden, not a pleading burden.  (Dkt. No. 32 at 26-27.)

The Norris-LaGuardia Act provides,

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

29 U.S.C. § 106.  Union liability for its members requires "clear proof of actual participation in, or actual authorization . . . of [unlawful acts]."  *Ramsey v. Mine Workers*, 401 U.S. 302, 311 (1971) ("In our view, s 6 requires clear and convincing evidence only as to the Union's authorization, participation in, or ratification of the acts allegedly performed on its behalf."). Section 6 requires that "when illegal acts of any individual are charged against one of the major antagonists in a labor dispute—whether employer or union—the evidence must clearly prove that the individual's acts were authorized or ratified." *Id.* at 310.  While section 106 requires a higher burden of proof than preponderance of the evidence at trial, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 737 (1966), on a motion to dismiss, the plaintiff need only allege enough facts to "state a claim to relief that is plausible on its face." *See Iqbal,* 556 U.S. at 678.

On the trespass to chattel cause of action, the SAC claims that Robert Moreno was a duly authorized agent of the Union with actual and apparent authority to act on behalf of the Union and was invited by the Union to participate in unlawful activities against Europa and engaged in such activities with union officials and in their presence.  (Dkt. No. 27, SAC ¶ 10.)   It further alleges that Moreno, an agent of the Union, repeatedly struck the hood and windshield of a vehicle to intimidate and place fear into a non-bargaining unit employee and other employees.  (*Id.* ¶ 11.)  Finally, the SAC complains that Moreno was an agent of the Union in carrying out actions assigned, ratified and condoned by the Union, and includes striking the hood and windshield of a vehicle.  (*Id.*)

The Court concludes these allegations that the Union authorized or ratified Moreno's unlawful conduct are sufficient to plead the trespass to chattel claim against the Union.  *See BE&K Const. Co. v. Will & Grundy Counties Bldg. Trade Council, AFL-CIO, No*., 96 C 1560, 1996 WL 547214, at *5 (N.D. Ill. Sept. 24, 1996) (denying motion to dismiss based on 29 U.S.C. § 106 against union alleging "by and through their agents").

Next, as to the real property claim, the SAC alleges that "Defendant and its agents unlawfully and without permission . . . repeatedly entered into non-public areas of

Plaintiff's facility during working time and in working locations to interrupt business and intimidate workers who were not striking." (Dkt. No. 27, SAC ¶ 66.)  It also asserts that agents of the Union were carrying out actions "assigned, ratified, and condoned by the Union and its Agents" when Defendant instructed bargaining unit members to intentionally trespass upon the employer's property with the intent to interrupt Plaintiff's business operations and unlawfully entered into the areas of Plaintiff's facility to interfere with business operations and use of intimidation.  (*Id.* ¶¶ 11(2), 11(5).)  The Court concludes the allegations that the Union ratified or condoned conduct surrounding the trespass to real property claim by agents of the Union are sufficient for a trespass to real property claim against the Union.  *See BE&K Const. Co.,* 1996 WL 547214, at *5.

Finally, on the defamation claim, the SAC alleges that Pedro Gomez published knowingly false facts that Europa did not have any qualified technicians performing services and repairs during the strike and that he published false statements that the unqualified technicians blew up an engine on a customer's car.  (Dkt. No. 27, SAC ¶ 69.) It claims that Gomez engaged in these acts as an agent of the Union.  (*Id.* ¶ 71.)  The SAC additionally complains that Gomez was a duly authorized agent of the Union with actual and apparent authority to act on behalf of the Union pursuant to common law and the NLRA.  (*Id*. ¶ 7.)  The allegations that the Union authorized or condoned conduct by agents of the Union supporting the defamation cause of action state a claim against the Union.  *See BE&K Const. Co.,* 1996 WL 547214, at *5.

The Court now considers whether each state law cause of action plausibly alleges a cause of action to satisfy the second prong of the anti-SLAPP analysis.

### b.   Third Cause of Action - Tortious Interference with Prospective Economic Advantage and Contractual Business Relations

The Union summarily argues that the third cause of action for tortious interference with prospective economic advantage and contractual business relations as it concerns the

secondary boycott are preempted by Section 303.[14]  (Dkt. No. 29-1 at 13.)  Europa disagrees.  (Dkt. No. 32 at 17.)

In general, state law may not encroach upon the systems of federal laws governing labor relations.  *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*").  Over the years, exceptions have developed, including one recognized in *Morton* concerning Section 303.  In that case, the United States Supreme Court held that Section 303 preempts state law based on peaceful union secondary activities.  *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 261 (1964) ("state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities.").  However, it held that Section 303 does not preempt state law where there is "violence and imminent threats to the public order."  *Id.* at 257.  The Court explained that states have a compelling interest in maintaining domestic peace which cannot be "overridden in the absence of clearly expressed congressional direction."  *Id.* (quoting *Garmon*, 359 U.S. at 247-48); *see Retail Prop. Trust v. United Broth. of Carpenters and Joiners of Am.*, 768 F.3d 938, 956 (9th Cir. 2014) (recognizing "*Morton* [ ] show[s] that § 303 does not so fully occupy the field such that any claim related to secondary boycotts must be brought under § 303 or not all.").

In *San Antonio Comm. Hosp.*, the case relied on by the Union, the Ninth Circuit summarily concluded that "interference with prospective economic advantage and contractual rights claims are preempted by section 303 of the LMRA."  *San Antonio Comm. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997) (citing *Morton*, 377 U.S. at 260–61).  However, that case did not involve violence but concerned the conduct of hand billing and bannering activity.  *Id.*  Further, the case also

---

[14] The third cause of action alleges a number of forms of conduct, including the unlawful secondary boycott, supporting the Section 303 cause of action.  (Dkt. No. 27, SAC ¶¶ 55-61.)  In its motion to strike, the Union only seeks dismissal of the allegations supporting the Section 303 claim; therefore, the other allegations in the third cause of action are unchallenged and will remain.  (Dkt. No. 29-1 at 13.)

involved an injunction under the Norris–LaGuardia Act ("NLA"), which relies on a standard not applicable in this case.

Here, the tortious interference with prospective economic advantage and contractual business relations claims are predicated on allegations of violence, threats of violence, intimidation, and assault and battery. (Dkt. No. 27, SAC ¶¶ 57-58.) For example, Europa alleges that the Union unlawfully blocked ingress and egress to its property over multiple days and for hours at a time and instructed its agents to physically assault and commit battery on those trying to enter the premises and physically hitting entering/exiting vehicles to intimidate or coerce those persons. (*Id.* ¶ 57.) It also alleges that picketers yelled profanities at persons entering the facility and engaged in assault and battery of persons entering and exiting the premises. (*Id.* ¶ 58(h).) Therefore, at this stage, the SAC has sufficiently alleged the Union engaged in violence, and therefore, the third cause of action concerning the allegations of the secondary boycott is not preempted by Section 303. *See Morton*, 377 U.S. at 257; *Mi–Jack Pros. v. Int'l Union of Operating Engineers, Local 150*, No. 94 C 6676, 1995 WL 42066 at *2 (N.D. Ill. Jan. 31, 1995) (denying motion to dismiss concluding tortious interference with contracts claim not preempted based on allegations of violence of union's picketing activity, which "included obstructing ingress and egress at the railyards, throwing rocks at vehicles, puncturing vehicle tires by spreading nails at the entrance of the railyards and using knives, setting fires, vandalizing tractor trailers, and threatening to cut the throats of certain individuals"); *Park Electric Co. v. International Brotherhood of Electrical Workers, Local 701, AFL–CIO*, 540 F. Supp. 779, 782 (N.D. Ill. 1982) (tortious interference with contract and other business-related torts are preempted by federal law unless "violent conduct or threat of such conduct is alleged"). Because Plaintiff has stated a claim for tortious interference with prospective economic advantage and contractual business relations, this state law claim survives the anti-SLAPP motion to strike.

/ / /

/ / /

### c. Fourth and Fifth Causes of Action - Trespass to Chattel and Trespass to Real Property

Defendant simply argues that the fourth cause of action for trespass to chattel and fifth cause of action for trespass to real property claims are preempted by *Garmon* because the identical issues have already been presented to the NLRB in an unfair labor practice charge filed by Europa and in a Board issued complaint against Europa.  (Dkt. No. 29-1 at 13-15.)  In response, Europa argues that the "local interest" exception to *Garmon* preemption bars relief on Defendant's motion.[15]  (Dkt. No. 32 at 14-16.)

*Garmon* preemption provides "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).  *Garmon* preemption applies to conduct arguably protected by Section 7 or arguably prohibited by Section 8.  *See Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 296 (1977); *Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 257–60 (1964).  Section 7 of the NLRA protects an employee's "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 157.  Section 8 of the NLRA provides a list of "unfair labor practice[s]" that employers and unions are prohibited from engaging in.  *See* 29 U.S.C. § 158(a).  For example, an employer must not "interfere with, restrain, or coerce employees in the exercise of" their section 7 rights, including the right to strike, and a union may not "refuse to bargain collectively with an employer."  *Id.*

---

[15] In reply, Defendant improperly rely on declarations and evidence to supports its argument that the exception to *Garmon* does not apply.  (Dkt. No. 33 at 5-9.)  On a motion to dismiss, the Court may not consider evidence outside the complaint.  Therefore, the Union's arguments relying on evidence outside the complaint, is without merit.

The Court has recognized exceptions to the *Garmon* preemption doctrine.  First, Congress has carved out statutory exceptions to the NLRB's exclusive jurisdiction Sections 301 and 303 of the LMRA.  *Vaca v. Sipes*, 386 U.S. 171, 179-80 (1967).  Next, Supreme Court precedent has held preemption does not apply "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. * * * (or) touched interests so deeply rooted in local feeling and responsibility that in the absence of compelling congressional direction, we could not infer that Congress has deprived the States of the power to act."  *Id.* at 180 (citing *Garmon* 359 U.S. at 243-44; *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966) (libel); *Int'l Union, United Auto. etc., Workers of Am. v. Russell*, 356 U.S. 634 (1958) (violence*); Int'l Assn. of Machinists v. Gonzales,* 356 U.S. 617 (1958) (wrongful expulsion from union membership); and *Allen-Bradley Local No. 1111, United Elec., Radio and Machine Workers of Amer. v. Wisconsin Emp. Relations Bd.*, 315 U.S. 740 (1942) (mass picketing)); *see also Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994) (NLRA will not preempt state action which regulates activity of "a merely peripheral concern" to the Act and where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.").

As discussed above, in *Garmon*, the Court provided an exception to state jurisdiction over conduct "marked by violence and imminent threats to the public order." *Garmon*, 359 U.S. at 247.  "Policing of actual or threatened violence to persons . . . has been held most clearly a matter for the states."  *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Emp. Relations Comm'n,* 427 U.S. 132, 136 (1976); *Farmer*, 430 U.S. at 299 ("Nothing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute . . . and thus, there is no risk that state damages actions will fetter the exercise of rights protected by the NLRA."); *Retail Prop. Trust*, 768 F.3d at 952.

Without any meaningful analysis, Defendant argues that the trespass to chattel and trespass to property claims are preempted because Plaintiff presented these same claims before the NLRB.  (Dkt. No. 29-1 at 14.)  On this issue, the "critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . *or different from* . . . that which could have been, but was not, presented to the Labor Board."  *Sears, Roebuck and Co. v. San Diego Cnty Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978) *(Garmon* preemption not applicable to trespass to property).  "Only if the controversy is identical to a claim that could have been presented to the Board would a state court's exercise of jurisdiction involve 'a risk of interference with the unfair labor practice jurisdiction of the Board.'"  *Retail Prop. Trust,* 768 F.3d at 953.

Here, the Union relies on the NLRB's decision dismissing Europa's unfair labor practice charge in Case 21-CB-298401 arguing the charge brought by Europa is identical to the trespass to property claim in the SAC.  (Dkt. No. 4-3, Fujimoto Decl., Ex. E at 20-21.[16])  While the Union argues that Europa cannot deny that the allegations in the NLRB's decision and the SAC are identical, Europa does not directly respond but instead argues that the nature of the allegations take it outside of conduct under the primary jurisdiction of the NLRB.  (*See generally* Dkt. No. 32 at 14-16; 17-20.)

A comparison of the NLRB decision on Europa's unfair practice charge and the SAC show that the issues are not facially identical.  The NLRB decision concerns an

---

[16] Despite relying on the NLRB decisions on unfair labor practice charges filed by Europa as well as an NLRB complaint filed against Plaintiff, the Union did not file a request for judicial notice ("RJN").  In its first motion to dismiss, the Court denied Defendant's RJN of the unfair labor practice charges filed by Plaintiff, the decision to dismiss the charges by the Regional Director of Region 21 of the NLRB and denial of the appeals with the NLRB General Counsel Office's Office of Appeals as moot because the Court did not consider those documents.  (Dkt. Nos. 4-4, 4-3, Dkt. No. 12 at 2 n.1.)  The Court also denied Defendant's RJN as to a complaint by the Regional Director of Region 21 of the NLRB against Europa as moot. (Dkt. No. 18-2; Dkt. No. 18-3, Fujimoto Decl,; Dkt. No. 26 at 2 n. 1.)  To the extent these requests for judicial notice were not opposed, the Court takes judicial notice of these documents. *See* Fed. R. Evid. 201(b).

22cv1987-GPC(BGS)

incident claiming unit employees entered the Employer's shop to check on their personal work tools for a period of 5-10 mins.  (Dkt. No. 4-3, Fujimoto Decl., Ex. E at 20-21.)  The NLRB complaint filed against Europa also concerned allegations of unlawfully disciplining striking employees who went onto the Employer's property to secure their tools.  (Dkt. No. 18-3, Fujimoto Decl. ¶ 4; *id*., Ex. C at 17.)  In contrast, the SAC alleges that agents of the Defendant entered Plaintiff's facility during working time to interrupt business and intimate workers who were not striking, (Dkt. No. 27, SAC ¶ 66), and used intimidation tactics, both verbal and physical, including actual physical assault and battery, trespassed into the internal areas of Plaintiff's premises and physically commandeered the shop to interfere with business operations, (*id.* ¶ 11(5)).  The Union's argument that the trespass to property is preempted by *Garmon* because the same claims were already raised before the NLRB is without merit.

Similarly, the NLRB's decision in Case 21-CB-298907 does not support the Union's argument that the trespass to chattel issue was raised before the NLRB.  (Dkt. No. 4-3, Fujimoto Decl., Ex. H at 31.)  That NLRB decision addressed name calling and other verbal remarks by picketers but did not address an agent of the Union striking the hood and windshield of a vehicle with a picket sign causing significant damage as it was entering Europa's premises, (Dkt. No. 27, SAC ¶ 63).  Therefore, the Union has not demonstrated these claims are preempted by *Garmon*.

Because both the trespass to chattel and trespass to property allege violent conduct, they fall under an exception to the *Garmon* preemption.  *See Garmon*, 359 U.S. at 247.  As such, both state law claims survive the anti-SLAPP motion to strike.

### d.   Sixth Cause of Action - Defamation

The Union maintains that the defamation claim is preempted for failing to allege any specific damages and that it fails to allege a statement of fact rather than hyperbole.  (Dkt. No. 29-1 at 15.)  In response, instead of addressing the preemption argument raised by the Union, Europa maintains that the Union has failed to provide legal authority that a general damages allegation is not sufficient to plead a defamation claim.  (Dkt. No. 32 at

24.)  Moreover, Defendant argues that whether an alleged defamatory statement is a statement of fact is a factual issue not applicable on a Rule 12(b)(6) motion.  (*Id.* at 25.)

As a threshold matter, and an issue not raised by either side, a party asserting *Garmon* preemption must show that the conduct is arguably subject to § 7 or § 8 of the NLRA.  *See Garmon*, 359 U.S. at 245; *Linn v. Plant Guard Workers*, 383 U.S. 53, 65 (1966) ("Thus the first inquiry, in any case in which a claim of federal preemption is raised, must be whether the conduct called into question may reasonably be asserted to be subject to Labor Board cognizance."); *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 577 (9th Cir. 2022) (the defendant, the party asserting preemption, satisfied its burden showing the "activity is arguably subject to § 7 or § 8 of the Act."); *Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1084 (D. Nev. 2012) ("A conclusory claim of *Garmon* preemption does not suffice.").  On this first inquiry, the party must "(1) advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the [NLRB] and (2) offer 'enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation."  *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986) (internal citation and quotation marks omitted).

Here, Defendant fails to address whether the defamation claim is arguably subject to § 7 or § 8 of the NLRA.  Because Plaintiff has shown a plausible claim for defamation, the Court DENIES the motion to strike the defamation claim based on the anti-SLAPP statute.

Further, in the event that the Union had challenged and shown the defamation claim as one subject to § 7 or § 8, the Court finds the allegations survive the motion to strike.  In *Linn v. Plant Guard Workers*, 383 U.S. 53, 65 (1966), the Court fashioned an exception to the *Garmon* preemption rule for defamatory statements made with actual malice and adopting the standard from *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) defining malicious libel as a statement published "with knowledge that it was false or with reckless disregard of whether it was false or not".  The Court held that

"where either party to a labor dispute circulates false and defamatory statements during a [labor dispute], the court does have jurisdiction to apply state remedies if the complainant *pleads* and proves that the statements were made with malice and *injured him*." *Id.* at 55 (emphasis added). As to damages, the Court explained that "proof of [ ] harm, [ ] may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law." *Id.* at 65; *see also Belknap, Inc. v. Hale*, 463 U.S. 491, 509 (1983) (in *Linn*, "we held that false and malicious statements in the course of a labor dispute were actionable under state law if injurious to reputation, even though such statements were in themselves unfair labor practices adjudicable by the Board."). Applying *Linn*, in *Fiori v. Truck Drivers Union Local 1770*, 130 F. Supp. 2d 150, 156 (D. Mass. 2001), the district court, in addressing *Garmon* preemption, denied dismissal of a slander claim concluding that the plaintiff had satisfied the *Linn* standard where the plaintiff had alleged the Union's conduct was done with malice and he was specifically injured due to lost wages. *Id.*

Here, the SAC alleges that Pedro Gomez, an agent of the Union, knowingly published false facts indicating that during the strike, Plaintiff did not have any qualified technicians performing services and repairs and that unqualified technicians blew up an engine on a customer car. (Dkt. No. 27, SAC ¶ 69.) It claims these statements were false, Gomez knew they were false, and engaged in these acts for the purpose of interfering with Europa's business *to cause customers not to use the services of [Europa].* (*Id.* ¶¶ 70, 71 (emphasis added).) Plaintiff alleges that it has been damaged in an amount to be proven at trial." (*Id.* ¶ 72.)

These allegations sufficiently allege that the statements were made with malice. In addition, while the claim of damages could have been clearer, it relies on facts which claim that Gomez made the statements intending to injure the reputation of the Defendant and produced damages. These factual allegations support an exception to preemption

under *Linn,* the Court concludes the defamation cause of action concerning conduct during a labor dispute is not preempted by *Garmon*.

### e.  Seventh Cause of Action - UCL

Defendant summarily argues, in one sentence, that the UCL must be dismissed because it is derivative of the other claims.  (Dkt. No. 29-1 at 6.)  Plaintiff did not address the UCL in the opposition and Defendant did not raise it in the reply.

The SAC raises a UCL claim under the "unlawful" prong.  (Dkt. No. 27, SAC ¶ 78.)  Under the UCL, unfair competition includes "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code. § 17200.  Under the "unlawful" prong, "[t]he UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999)).  On the "unlawful" prong, the claim is dependent on the underlying allegations.  *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 952-53 (C.D. Cal. 2014).  Therefore, a UCL claim based on the unlawful prong rises or falls with the underlying claim.  *See Aleksick v. 7-Eleven, Inc.,* 205 Cal. App. 4th 1176, 1185 (2012) (a UCL cause of action under the "unlawful" prong fails if a statutory predicate is not stated); *Wolski v. Fremont Inv. & Loan,* 127 Cal. App. 4th 347, 357 (2005) (holding that a UCL claim rises or falls with the underlying claim on which it is predicated).

Here, because Plaintiff's Section 303 claim survived a Rule 12(b)(6) challenge as well as survived an anti-SLAPP challenge by stating a claim as to trespass to chattel, trespass to property, and defamation, the Court DENIES dismissal of the UCL claim based on these claims.[17]

/ / /

---

[17] The Court notes that the UCL claim does not allege a violation of tortious interference with prospective economic advantage and contractual business relations.  (Dkt. No. 27, SAC ¶ 78.)

22cv1987-GPC(BGS)

**Conclusion**

Based on the reasoning above, the Court DENIES Defendant's motion to dismiss the LMRA Section 301 claim for lack of subject matter jurisdiction under Rule 12(b)(1), GRANTS Defendant's motion to dismiss the LMRA Section 301 under Rule 12(b)(6) and DENIES Defendant's motion to dismiss the LMRA Section 303 claim for failing to state a claim under Rule 12(b)(6).  In addition, the Court DENIES Defendant's motion to strike the state law claims under the anti-SLAPP statute.  The hearing set on February 9, 2024 shall be **vacated.**

IT IS SO ORDERED.

Dated:  February 8, 2024

Hon. Gonzalo P. Curiel
United States District Judge

22cv1987-GPC(BGS)